THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN M. HALL, Defendant-Appellee.

Fourth District No. 4—98—0597

Argued April 14, 1999.—Opinion filed March 10, 2000.

KNECHT, J., dissenting.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The State appeals the order of the circuit court of Champaign County dismissing a felony charge of aggravated battery (720 ILCS 5/12—4(b)(8) (West 1994)) brought against defendant Steven M. Hall. The dismissal was entered on remand ordered by this court (*People v. Hall*, 291 Ill. App. 3d 1142, 716 N.E.2d 888 (1997) (unpublished order under Supreme Court Rule 23) (No. 4—97—0111)) and was based on the trial court's finding that the State acted vindictively in the filing of the felony charge. On appeal, the State argues (1) the trial court did not apply the proper standards in determining the State was actually vindictive; and (2) applying the proper standard, defendant did not meet the burden of establishing the State was actually vindictive. We agree and reverse.

Taken with the case was the State's motion to supplement the record on appeal and defendant's objection thereto. The State seeks to supplement the record with two volumes of common law record in Champaign County case Nos. 96—DT—341 and 96—TR—13731 and a partial report of proceedings of the hearing of October 9, 1996, in case No. 96—DT—341. In the original appeal, this court allowed the State's motion to supplement the record with these documents. *People v. Hall*, No. 4—97—0111 (order of May 16, 1997). In addition, the State moves to supplement the record in this appeal with a copy of the report of proceedings of the February 14, 1997, hearing in the trial court on defendant's motion to dismiss, which transcript was also before this court in the earlier appeal. Accordingly, we allow the motion to supplement the record.

On July 14, 1996, defendant was arrested and charged by citation with driving a motor vehicle while having a blood-alcohol concentration of 0.10 or more (625 ILCS 5/11—501(a)(1) (West 1996)) in No. 96—DT—341 (DUI) and improper lane usage (625 ILCS 5/11—709(a) (West 1996)) in No. 96—TR—13731. The parties agree he was also arrested for a municipal offense of battery (Champaign Municipal Code § 23—42). Assistant State's Attorney Heather Prendergast was assigned to prosecute the causes against defendant, with the assistance of Daniel Kay, a Rule 711 student (145 Ill. 2d R. 711). In a September 16, 1996, letter, the State offered to dismiss the improper lane usage charge if the defendant would plead guilty to the DUI charge. Defendant declined the offer and requested the matter proceed to trial. On the morning the case was set for trial, October 9, 1996, Prendergast filed an information charging defendant with DUI.

That same morning, the State filed a motion for continuance supported by affidavit, which stated as follows: (1) at 10 p.m. the night before, the State discovered the breath test taken by defendant was not properly certified, creating an admissibility problem for the State; (2) the State unsuccessfully attempted to contact an inspector with the Department of Public Health, who would be essential to laying a proper foundation for admitting the breath test; and (3) the State had not subpoenaed the inspector and had no reason to believe he would be available to testify that day. Defendant objected to the State's motion for continuance. Following a brief continuance for the State to conduct additional research on the issue of admissibility, the trial court denied the State's motion for continuance. Immediately thereafter, the State nol-prossed the DUI and improper lane usage charges.

Later that same day, October 9, 1996, Assistant State's Attorney Mick McAvoy filed the felony charge of aggravated battery against defendant. Defendant moved to dismiss the charge, asserting vindictive prosecution.

In his motion, defendant alleged that, on the morning of October 9, 1996, prior to and during the proceedings on the State's motion for continuance, McAvoy was present in the courtroom and engaged in a heated discussion with defense counsel regarding defense counsel's failure to notify the State of the defect in the State's evidence, of which McAvoy asserted defense counsel was aware. Defendant further alleged that the State dismissed the charges over defendant's objection. According to defendant, his insistence on his right to proceed to trial and his successful resistance of the State's motion for continuance left the State no choice but to dismiss the DUI charge. In conclusion, defendant alleged that the culmination of these events led McAvoy to charge defendant with aggravated battery "in retaliation" and "out of prosecutorial vindictiveness," violating defendant's due process rights.

On February 14, 1997, at the hearing on the defendant's motion to dismiss, Prendergast testified that, in a conversation with defense counsel, she was alerted to the possibility of a problem with the State's evidence. In the course of preparing for trial the evening of October 8, 1996, she discovered the problem alluded to by defense counsel, the improper certification of defendant's breath test. On the morning of trial, October 9, 1996, she filed an information charging defendant with DUI and then filed a motion for continuance, which motion was denied. Prendergast was present in the courtroom when a discussion took place between McAvoy and defense counsel. McAvoy did not raise his voice and did not appear upset. Defense counsel then asked Prendergast, "do you recall me advising him during that discussion, if he was handling the case that he should talk to me about it, otherwise shut up?" Her answer was she did not remember but agreed it was "something similar to that." After the trial court denied the State's motion for continuance, Prendergast made a motion to dismiss the DUI charge. The motion was granted over defendant's objection. Prendergast had no role in filing the felony aggravated battery information, which was filed by McAvoy. She had no knowledge of when it was filed, and McAvoy did not discuss that charge with her.

McAvoy testified he had no official responsibility in the case against defendant. He became aware of the potential problem with the DUI case against defendant when Prendergast and Kay telephoned him on October 8, 1996, the night before the trial. He first understood the problem with the admissibility of the breath test results at about 10 that night. He met with police officers that night, became aware of the battery offense allegedly committed by defendant, and determined to file felony charges against defendant. He did not recall whether he informed Prendergast of his intent to file the aggravated battery

charge and testified he did not give notice to defendant or his counsel of his intent to file the charge. His decision to file the aggravated battery charge had nothing to do with his discussion with defense counsel or with defendant's persistence in asserting his right to trial on the traffic offense.

Thereafter, the trial court granted defendant's motion to dismiss, finding the State's conduct to be presumptively vindictive. Relying on *People v. Walker*, 84 Ill. 2d 512, 419 N.E.2d 1167 (1981), the trial court found the State failed to identify objective facts sufficient to justify the decision to enhance the battery charge against defendant. The State appealed, arguing *inter alia* that *United States v. Goodwin*, 457 U.S. 368, 73 L. Ed. 2d 74, 102 S. Ct. 2485 (1982), dictated the trial court erred in finding a presumption of vindictiveness applied in the present case.

On appeal, this court reversed, ruling that the trial court erred in finding the filing of the aggravated battery charge was presumptively vindictive and remanded for a determination of actual vindictiveness. *People v. Hall*, No. 4—97—0111, slip order at 3 (September 12, 1997) (unpublished order pursuant to Supreme Court Rule 23). Remanding the cause for a determination of actual vindictiveness, we cited *Goodwin*, which stated when a presumption of vindictiveness is not warranted " 'a defendant in an appropriate case might *prove objectively* that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do.' (Emphasis added.)" *Hall*, slip order at 8-9, quoting *Goodwin*, 457 U.S. at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494. This court specifically found that, on the evidence before the trial court, no inference arose that the prosecutor acted with vindictiveness in charging defendant with aggravated battery. *Hall*, slip order at 8. The trial court was directed to make a determination of whether actual vindictiveness was shown based on objective proof, noting that the trial court should not apply a presumption of vindictiveness, which would impose the initial burden of proof on the State.

Following remand, the trial court conducted a further hearing on May 5, 1998. The trial court took judicial notice of the underlying proceedings in Nos. 96—DT—341 and 96—TR—13731 and the proceedings in the February 14, 1997, hearing. Daniel Kay, who did not testify at the first hearing, testified that on October 8, 1996, he was employed in the State's Attorney's office in the capacity of a Rule 711 student, and on that date he was working on the DUI case with Prendergast, who had the primary responsibility. Kay became aware of the evidentiary problem sometime between 7 and 9:30 that evening. In answer to defendant's counsel's question concerning problems with

the chemical test results, Kay stated, "I recall specific conversations, not with me, however I believe it was with you, over the phone, where you gave a cryptic response as to why you were going to go forward with the case and we anticipated it was going to be a plea." Kay stated he was inexperienced with the steps to go through as to foundation requirements for evidence and was not familiar with how much experience Prendergast had, but that McAvoy "was the most experienced and he was offering assistance in that regard." McAvoy was working in his own office upstairs, but would come back down and was with them intermittently throughout that evening. "It seemed that Mick simply—simply appeared and he was—he was good like that, actually. He was always willing to offer advice and help, help out." "The best way to characterize it is a big brother was offering guidance." Kay was not aware of any discussions that night regarding the filing of felony charges against defendant. Kay was present throughout the evening and he was not involved in any meeting in which members of the police department were present. He did not participate in any interviews of police officers in this case. It was possible a meeting was conducted and he did not participate. On the morning of October 9, 1996, prior to the commencement of defendant's trial, Kay and Prendergast "assumed" their positions at the counsel table and McAvoy "assumed a position back in the gallery area." According to Kay, there was discussion in which the three of them inquired of defense counsel "why are you doing this to us," *i.e.*, allowing the case to proceed to trial without informing the State of the evidentiary defect. Kay described the exchange "as kind of like you see with in a bar fight, when two people are getting ready to square off at each other." Thereafter, defense counsel, as he was leaning, pointed his finger at McAvoy, who was still seated in the gallery, telling him if "it wasn't his case, for him to butt out and shut up." Following this exchange, court convened, the State's motion for continuance was denied, and the State nol-prossed the charges. Shortly thereafter, McAvoy indicated to Kay that it was not over yet and he was going to look into filing felony charges.

The trial court again granted defendant's motion to dismiss, finding the objective facts presented "persuade that the felony filing was vindictive," *i.e.*, the State's filing of the additional felony charge of aggravated battery was to punish defendant for securing dismissal of the traffic charges. This appeal followed.

■ Vindictive prosecution claims present questions of both law and fact. We therefore review the trial court's legal conclusions *de novo*, but we will not upset the trial court's findings of fact unless clearly erroneous. *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998).

"Due process of law requires that there be no vindictiveness against a defendant for having chosen to exercise such constitutional rights as an attack on his first conviction. *North Carolina v. Pearce*, 395 U.S. 711, 723-25, 89 S. Ct. 2072, 2079-80, 23 L. Ed. 2d 656 (1969). Since *Pearce*, in a series of cases, the Supreme Court has interpreted and clarified the circumstances in which retaliatory use of prosecutorial power must not be tolerated." *United States v. Whaley*, 830 F.2d 1469, 1477 (7th Cir. 1987).

■ One purpose of instituting criminal proceedings against an individual is to punish; therefore, the presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative. *Goodwin*, 457 U.S. at 372-73, 73 L. Ed. 2d at 80, 102 S. Ct. at 2488. A prosecutor's discretion to charge is broad, and in some circumstances the prosecutor may file additional and harsher charges against a defendant. *Whaley*, 830 F.2d at 1477. In general terms, a prosecution is vindictive and violates due process if undertaken "[t]o punish a person because he has done what the law plainly allows him to do." *Goodwin*, 457 U.S. at 372, 73 L. Ed. 2d at 80, 102 S. Ct. at 2488. Such a violation is remedied through dismissal of the criminal charges brought against defendant. *People v. Flanagan*, 201 Ill. App. 3d 1071, 1078, 559 N.E.2d 1105, 1110 (1990). However, " 'the Due Process Clause is not offended by *all* possibilities of increased punishment *** but only by those that pose a realistic likelihood of "vindictiveness." ' " (Emphasis added.) *Goodwin*, 457 U.S. at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494, quoting *Blackledge v. Perry*, 417 U.S. 21, 27, 40 L. Ed. 2d 628, 634, 94 S. Ct. 2098, 2102 (1974).

The possibility of vindictive motivation is more likely in charging decisions made after defendant exercises rights challenging his conviction rather than before trial. *Goodwin*, 457 U.S. at 381, 73 L. Ed. 2d at 85, 102 S. Ct. at 2492-93. Thus, the Supreme Court has held a presumption of prosecutorial vindictiveness is warranted where a prosecutor brings additional charges and more serious charges against defendant *after* defendant has been convicted of an offense and has overturned his conviction, thereby subjecting a defendant to greater sanctions for pursuing a statutory or constitutional right. See *Blackledge*, 417 U.S. at 27-29, 40 L. Ed. 2d at 634-35, 94 S. Ct. at 2102-03. In contrast, no such presumption adheres in the pretrial setting, where the prosecutor has broad discretion in charging a defendant. See *Goodwin*, 457 U.S. at 382-84, 73 L. Ed. 2d at 86-87, 102 S. Ct. at 2493-94. When the presumption is not applicable, "a defendant in an appropriate case might *prove objectively* that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." (Emphasis added.) *Goodwin*, 457 U.S.

at 384, 73 L. Ed. 2d at 87, 102 S. Ct. at 2494. Our remand order instructed the trial court to make a determination as to whether actual vindictiveness was shown based on objective proof, without any presumption of vindictiveness in this pretrial setting.

The State contends that the trial court did not apply the proper standards on remand in determining that it was actually vindictive. Specifically, the State alleges that the trial court misunderstood the question presented on remand and erred in determining that a reasonable person viewing the evidence would find it was more likely than not that the charge was vindictively filed based on objective proof. The State concludes the proper inquiry should have been whether actual vindictiveness was present, taking into consideration the prosecutor's testimony as to the reasons for filing the charge.

The trial court made a determination that actual vindictiveness was shown. It found the State's filing of the additional charge was to punish defendant for securing dismissal of the traffic charges. While the trial court used language about what a reasonable person would conclude, it also stated the facts presented "persuade that the felony filing was vindictive." The issue is not whether the proper query or determination was made, but whether the proper standard of proof was used by the trial court in reaching its determination of actual vindictiveness.

No authoritative Illinois Appellate or Supreme Court opinions guide us in assessing a claim of actual prosecutorial vindictiveness. The seventh circuit has determined that, to establish a claim of actual prosecutorial vindictiveness, a defendant not only must produce (1) objective evidence the prosecutor had some animus or retaliatory motive, but also must produce (2) objective evidence that tends to show the prosecution would not have occurred absent that motive. *United States v. Benson*, 941 F.2d 598, 612 (7th Cir. 1991); *United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir. 1994). Once defendant successfully establishes actual vindictiveness, the prosecution must come forward with objective evidence of a legitimate motivation for filing the charge. See *United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996); see also *United States v. Contreras*, 108 F.3d 1255, 1262-63 (10th Cir. 1997) (requiring State to justify its decision with legitimate, articulable, objective reasons).

"Burden of proof" in the context of criminal law defenses may be intended to refer to any one of at least three distinct evidentiary burdens: the burden of pleading, the burden of production, and the burden of persuasion. 1 P. Robinson, Criminal Law Defenses § 3, at 12 (1984) (hereinafter Criminal Defenses). The burden of pleading, not at issue in this case, simply refers to the burden of introducing or raising

the defense for consideration. 1 Criminal Defenses § 3, at 13. The burden of production serves to exclude legal issues not sufficiently supported by evidence from consideration by the trier of fact. The party bearing the burden of production must adduce sufficient evidence to support or negate, as the case may be, the asserted defense. Generally, the party benefitting from having the issue presented to the trier of fact must bear the burden of production on that issue. 1 Criminal Defenses § 3, at 15. The burden of persuasion describes the degree to which a trier of fact must be persuaded to decide an issue in favor of the burdened party. 1 Criminal Defenses § 3, at 16.

■ We hold that defendant bears the burden of production and persuasion in seeking to prove a claim of actual prosecutorial vindictiveness, which means a defendant not only must produce objective evidence that the prosecutor had some animus or retaliatory motive, but also must produce objective evidence that tends to show the prosecution would not have occurred absent that motive. *Benson*, 941 F.2d at 612; *Cyprian*, 23 F.3d at 1196. Once this showing is made, the prosecution must come forward with objective evidence of a legitimate motivation for filing additional or more serious charges.

The allocation of both the burden of production and persuasion to the defendant in this context is consistent with the Supreme Court's observation in *Goodwin*. The Supreme Court acknowledged in *Goodwin* that the defendant's burden in proving a claim of actual vindictiveness is onerous, citing with approval the observation of the government in its brief, which stated:

" 'Accordingly, while the prosecutor's charging decision is presumptively lawful, and the prosecutor is not required to sustain any burden of justification for an increase in charges, the defendant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjustifiable penalty for the exercise of a procedural right. Of course, only in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration.' " *Goodwin*, 457 U.S. at 384 n.19, 73 L. Ed. 2d at 87 n.19, 102 S. Ct. at 2494 n.19.

Here, the trial court stated that its finding of vindictiveness was reached "with the burden on defendant" to prove objectively the claim asserted.

The State argues that defendant did not meet his heavy burden of establishing that the State was actually vindictive. In addition, the State argues that the trial court did not specifically identify evidence of prosecutorial animus or retaliatory motive and failed to find that defendant would not have been prosecuted absent such animus.

A claim of prosecutorial vindictiveness turns on the facts of each case.

The trial court found a heated argument occurred; McAvoy did not give notice to Prendergast and Kay of his intent to file felony charges on the evening of October 8, 1996; an opportunity to file the felony information existed when the DUI information was filed; no meeting with police officers occurred on October 8; McAvoy had no assigned responsibility for prosecution of defendant until he determined to file the felony charges; he did not tell Prendergast or Kay that he was filing the felony charge before doing so; and following dismissal of the traffic charge, McAvoy told Kay the case was not over yet.

■ We disagree with the trial court's finding that defendant secured the dismissal of the DUI charge. What the defendant did was give the appearance that he was going to object to the admission of the breath test report. This never occurred. At the most, the defendant exercised the right of objecting to a continuance requested by the State. The trial court denied the continuance, and the State moved to nol-pros the traffic charges. The record suggests, contrary to the trial court's finding, that the defendant objected to the *nolle prosequi* motion.

In finding vindictiveness on the part of the prosecution, the court should not consider the obnoxious behavior of one or both of the attorneys who represent the real parties in interest, the defendant and the People of the State of Illinois.

The proceedings for which defendant claimed a due process violation were *pretrial* proceedings. This was not a case where defendant had proceeded to trial. The trial court found that the filing of the aggravated battery charge "was to punish the defendant for securing a dismissal of the traffic charge[s]." The defendant did not move for a dismissal nor did he secure a dismissal of the traffic charges. A statement in discussion with the prosecutor to the effect that he would object to the breath test report if the State sought to admit it into evidence is not the giving up of a right.

In *Whaley*, the first trial concluded with a hung jury and the trial court declared a mistrial. Defendant had been indicted on one count of conspiracy to possess with intent to distribute drugs. After the mistrial, the government filed a superseding indictment charging six acts in addition to the original charge. *Whaley*, 830 F.2d at 1471.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 363-65, 54 L. Ed. 2d 604, 610-12, 98 S. Ct. 663, 668-69 (1978), the Court held that additional charges may be used to induce a defendant to plead guilty. "Once that conclusion was accepted, it necessarily followed that it did not matter whether the 'additional' charges were obtained in the original indict-

ment or merely threatened in plea negotiations and obtained once those negotiations broke down." *Goodwin*, 457 U.S. at 379 n.10, 73 L. Ed. 2d at 84 n.10, 102 S. Ct. at 2491 n.10.

The *Goodwin* court stated:

> "[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380, 73 L. Ed. 2d at 85, 102 S. Ct. at 2492.

*Bordenkircher* concerned plea negotiations, the breakdown of the negotiations, and the prosecutor carrying out his threat to have defendant indicted on more serious charges if he did not plead guilty to the offense with which he was originally charged. The instant case does not involve a plea negotiation. We note that the municipal battery charge remained pending throughout the proceedings in the traffic cases and the subject of the battery was not injected into the negotiations concerning the traffic offenses by the State or defendant. Defendant had no legitimate expectation that the battery charge would be dismissed or would not be enhanced to aggravated battery.

Although defendant argues that he was penalized for exercising a right, the record simply shows a *nolle prosequi* of the DUI charges. At the most, the record shows that defendant had made it clear that, in the event trial proceeded on the DUI charge, he would object to certain evidence. The only motive shown by this evidence is an animated conversation by defense counsel attempting to inject McAvoy into the proceeding or to insist that he "butt out." This evidence is insufficient to sustain the trial court's decision finding vindictiveness. However, the trial court was correct in stating that giving the impression to Kay that the atmosphere was akin to a bar fight does not promote the reputation of lawyers and that "[e]very member of the legal profession has an obligation to conduct himself or herself appropriately."

The order of the circuit court of Champaign County is reversed, and this case is remanded for further proceedings.

Reversed and remanded.

STEIGMANN, J., concurs.

JUSTICE KNECHT, dissenting:

I respectfully dissent. The same trial judge has now twice concluded prosecutorial vindictiveness occurred in this case. At the heart of the trial court's ruling is the conclusion Assistant State's Attorney (ASA) McAvoy lied about why the felony charge was filed.

The objective circumstances surrounding the prosecutor's decision

to increase charges against defendant were succinctly summarized by the trial court as follows.

ASA McAvoy, who filed the information charging defendant with aggravated battery, had a heated argument with defense counsel shortly before the filing of the felony charge. Although ASA McAvoy spent the entire evening the day before the filing with ASA Prendergast and Kay, who were assigned to and responsible for prosecuting the traffic matter, ASA McAvoy did not mention to them his intent to file felony charges on the night before the trial date. On the day of the DUI trial, an opportunity to file a felony aggravated battery charge existed when the DUI information was filed, but none was filed and no mention was made of that possibility.

In contradiction to ASA McAvoy's testimony, *no meeting* regarding defendant's conduct occurred with police officers and any of the ASAs the night before the DUI trial. ASA McAvoy had no assigned responsibility for prosecution of the defendant until he determined to file the felony charge. ASA McAvoy gave no notice to ASA Prendergast and Kay that he was filing a felony charge prior to doing so. Following dismissal of the traffic charge, ASA McAvoy commented to Kay that the case was not over yet and he would look into filing felony charges. The trial court's findings of fact are not clearly erroneous and we should not substitute our judgment for the trial court's on these critical points. I do not suggest a senior prosecutor is obligated or likely to discuss his filing intentions with junior prosecutors, but in the unique circumstances of this case, the trial court was entitled to give that failure evidentiary significance. I believe defendant presented objective evidence establishing prosecutorial animus and the additional charge would not have been filed absent such animus.

ASA McAvoy testified the impetus to his filing of the felony charge was a meeting he attended with ASAs Prendergast and Kay and members of the police department, *and the sharing of information that occurred at that meeting*. However, the trial court concluded no such meeting occurred. The trial court did not find ASA McAvoy's testimony believable. In effect, the trial court concluded ASA McAvoy lied about the meeting. The very meeting ASA McAvoy contended was the impetus for his filing decision did not even occur. This conclusion coupled with the other findings is more than sufficient to sustain the trial court's decision.

The majority contends defendant did not secure a dismissal of the traffic charge. The defendant's objection to a continuance and his likelihood of success on resisting the admissibility of the breathalyzer test prompted the State to dismiss the DUI charge. This is the equivalent of securing a dismissal. ASA McAvoy retaliated by filing a felony

battery charge. The State did not present any evidence this was simply a routine review and enhancement of a municipal battery charge or that a three-month delay in filing such a charge was typical. The only rebuttal to the defendant's evidence was the testimony of ASA McAvoy, which the trial court found less than credible.

I would affirm.