# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Rendak*, 2011 IL App (1st) 082093

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NUBIA RENDAK, Defendant-Appellant. |
| District & No. | First District, Fourth Division <br> Docket No. 1-08-2093 |
| Filed | September 1, 2011 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated battery of a peace officer and resisting or obstructing a peace officer were upheld on appeal where a rational trier of fact could have found the essential elements of the offenses were proven beyond a reasonable doubt, and defendant's motion to dismiss based on allegations of prosecutorial vindictiveness was properly denied, despite the fact that the indictment against defendant was refiled shortly after she filed a civil rights suit based on the incident. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-2093; the Hon. Kevin M. Sheehan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

James R. Branit, of Litchfield Cavo LLP, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Adam Miel Zebelian, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.

Justices Pucinski and Sterba concurred in the judgment and opinion.

## OPINION

¶ 1                            I. BACKGROUND

¶ 2       This appeal stems from a physical altercation occurring at a police station between defendant Nubia Rendak, Officer Charlene Fine and detention aide Joyce Ivy. As a result of the incident, defendant was charged with two counts of aggravated battery to a peace officer and two counts of resisting or obstructing a peace officer. After a bench trial, defendant was convicted on all counts and sentenced to two years' probation. On appeal, defendant contends that: (1) her indictment should have been dismissed because it was the product of vindictive prosecution; (2) she is entitled to a new trial because the trial court improperly restricted defense counsel's cross-examination of the State's witnesses; and (3) the evidence at trial was insufficient to prove her guilty beyond a reasonable doubt. For the reasons discussed below, we affirm.

¶ 3       In the early morning hours of July 22, 2004, Chicago police officers were called to the home of defendant where she was arrested for domestic battery to her then-husband. Due to defendant's conduct during her arrest and her behavior while she was being processed at the police station, she was charged on July 24, 2004, with two counts of aggravated battery to a peace officer. On August 13, 2004, the aggravated battery charges against defendant were nol-prossed when the officers failed to appear in court for a hearing. On October 10, 2004, defendant's domestic battery charge, which originated from the altercation resulting in her arrest, was amended to battery to which defendant pled guilty and received a sentence of one year's supervision.

¶ 4       On May 2, 2006, defendant filed a civil rights lawsuit in federal court against the City of Chicago, the police officers who arrested her, and the police officer and detention aide who processed her at the police station. In her complaint, defendant alleged that while she was being placed under arrest for her domestic battery charge on July 22, 2004, the arresting Chicago police officers battered her without any provocation, to which she sustained injuries and trauma. On July 27, 2006, the parties and the attorneys met in an unsuccessful attempt to settle the civil suit. On July 28, 2006, an indictment against defendant was filed charging

-2-

her with two counts of aggravated battery to a peace officer and two counts of resisting a peace officer resulting from her conduct on July 22, 2004. At a second settlement conference on September 12, 2006, the district court determined that defendant's civil suit should be stayed and dismissed without prejudice until the completion of the criminal case pending against defendant.

¶ 5    Prior to her criminal trial, defendant filed a motion to dismiss the July 28, 2006, indictment which argued, *inter alia*, that the indictment was brought as vindictive retaliation for her filing the civil rights lawsuit. Defendant requested that the charges against her be dismissed, or alternatively, that the court conduct an evidentiary hearing to determine whether the State had abused its discretion by indicting her. The trial court denied this motion.

¶ 6    At trial, three witnesses testified on behalf of the State. Officer J. Meier testified that around 12:30 a.m. on July 22, 2004, he responded with his partner, Officer Prete, to a domestic battery call at the home of defendant. After speaking with defendant's then-husband and observing injuries to his face, Officer Meier saw defendant emerge from an alley. Officer Meier testified that when he first saw defendant, he noticed that there were bruises on both of defendant's arms as well as above her left eye. He also believed that defendant was intoxicated because she smelled of alcohol, spoke in a drunken manner and was acting belligerent. When Officer Meier approached defendant to place her under arrest, she resisted. Officer Meier admitted that because defendant was struggling, some force was required to restrain defendant to effect an arrest; however, he denied that any officer at any time punched or kicked defendant, or stomped on her hand during the arrest.

¶ 7    Officer Charlene Fine testified that on July 22, 2004, she was working as a lockup keeper in the 25th District along with detention aide Joyce Ivy when defendant arrived around 4:55 a.m. Upon defendant's arrival, Officer Fine testified that she observed bruises on both of defendant's arms and a bruise over her left eye. Officer Fine also believed that defendant was intoxicated because she slurred her words and smelled of alcohol. Defendant was initially cooperative upon arriving but when Officer Fine and Ivy attempted to photograph and fingerprint defendant, she became "extremely belligerent." Defendant sufficiently resisted such that Officer Fine was unable to continue the processing she had begun. Officer Fine decided that defendant should be placed in a holding cell and given time to calm down, but when Ivy and Officer Fine attempted to do so, defendant cursed and struggled. With a closed fist, defendant struck Officer Fine in the left eye and cheekbone with sufficient force to crack the frame of her glasses and dislodge a lens. Defendant then dropped to the ground and began swinging her arms and kicking both Ivy and Officer Fine numerous times as they continued in their attempt to escort defendant to the holding cell. Eventually, defendant was successfully placed into the holding cell. However, as a result of defendant's conduct, Officer Fine sustained a fractured cheek bone and eye socket, as well as considerable bruising on her arms, face, and ankle. Her injuries caused her to take a leave of absence of approximately four months.

¶ 8    Detention aide Joyce Ivy's testimony was largely consistent with that of Officer Fine. She testified that she was also working in the 25th District on July 22, 2004. When defendant arrived at the police station, Ivy observed that defendant visually appeared intoxicated and

smelled of alcohol. Ivy also saw that defendant had various bruises on her arms and face which did not appear to be "fresh." Ivy did not document defendant's observed injuries because defendant had been received with "medical clearance," and Ivy indicated that in such cases, injuries do not have to be recorded. Although defendant was cooperative during a routine search of her person, she became uncooperative and cursed at Ivy and Officer Fine when they attempted to photograph her. Ivy then assisted Officer Fine in taking defendant to a holding cell; however, defendant resisted. Ivy saw defendant strike Officer Fine in the face, and as defendant continued to resist, she began scratching and kicking both Ivy and Officer Fine. Defendant was eventually successfully placed in a holding cell. As a result of the incident, Ivy stated she sustained an injury to a finger on her right hand and was kicked several times in the legs, and that she could not work for several days due to these injuries. Ivy also denied that either she or Officer Fine struck defendant at any time during the altercation.

¶ 9    Three witnesses testified on behalf of the defense. Defendant's sister, Dorroi Tavares, had seen defendant prior to her arrest in the early morning hours of July 22, 2004, when Tavares gave defendant a ride home. Tavares testified that she did not observe any bruises on defendant's body or face at that time. She only first observed bruises on defendant's body and face when she picked defendant up from jail several days later.

¶ 10    Tara Rendak, defendant's 17-year-old daughter, testified that she was present at defendant's home at the time of the arrest and believed that defendant was under the influence of alcohol based on her raised temper. Tara did not see any bruises on defendant's body prior to the arrest. She also saw defendant wrestling with police officers and trying to get away while they were arresting her.

¶ 11    Defendant testified on her own behalf. She testified that on the night prior to her July 22, 2004, domestic abuse arrest, she had drunk five beers. When she arrived at her home, she and her then-husband began to argue. The argument escalated to the point where Tara was asked by defendant's then-husband to call the police. When the police officers arrived, defendant stated she ran to a door, threw a table, and then ran outside to her car, where she was apprehended by police officers. During her arrest, she testified that one of the officers stomped on her right hand and broke it. After being arrested, however, she was sent to the hospital where it was revealed that her hand was not broken. Defendant testified that once she was at the police station, she was "pretty cool," but did not want her photograph to be taken by the "ladies."[1] Defendant testified that Officer Fine and Ivy came into the holding cell to force her to be photographed, and in doing so, pinned her down, kicked her in the back, and struck her in the head with a fist. During defendant's testimony, she was shown 16 photographs apparently depicting the bruising to her body and was able to assign a responsible individual for each injury.[2] She also claimed that prior to being taken into custody, she did not have any bruises on her body, except for a "little one." Defendant

---

[1]Defendant was unable to identify Officer Fine and Ivy by name, but referred to them as the "black officer" and the "white officer" in testifying to their actions.

[2]The photographs were not included in the record on appeal.

-4-

testified that she did not remember hitting anyone with her hand and that she kicked her feet a couple times, but only after Officer Fine and Ivy began beating her.

¶ 12     The trial court found defendant guilty of all charges and sentenced her to two years' probation. Defendant timely appeals.

¶ 13                                   II. ANALYSIS

¶ 14                          A. Prosecutorial Vindictiveness

¶ 15     Defendant first contends that her indictment should have been dismissed because the State's refiling of criminal charges against her constituted vindictive prosecution. As a general matter, a prosecution is vindictive and violates due process if it is undertaken to punish a defendant because he has done "what the law plainly allows him to do." *United States v. Goodwin*, 457 U.S. 368, 372 (1982); see also *People v. Hall*, 311 Ill. App. 3d 905, 911 (2000). We must also, however, keep in mind that "[o]ne purpose of instituting criminal proceedings against an individual is to punish; therefore, the presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative." *Hall*, 311 Ill. App. 3d at 911 (citing *Goodwin*, 457 U.S. at 372-73). Claims of vindictive prosecution present questions of both law and fact, and therefore this court reviews the trial court's legal conclusions *de novo*, but will not upset the trial court's findings of fact unless they are clearly erroneous. *Hall*, 311 Ill. App. 3d at 910.

¶ 16     The thrust of defendant's argument here is based on timing. Defendant's primary evidence is the fact that the criminal charges against her were refiled after she filed a civil rights lawsuit. Defendant claims that the circumstances entitled her to a presumption of prosecutorial vindictiveness. Presumptions of vindictiveness, however, only exist in a very narrow set of circumstances. Ordinarily, a presumption of prosecutorial vindictiveness exists where a prosecutor brings additional charges and more serious charges against a defendant after the defendant has successfully overturned a conviction, effectively subjecting the defendant to greater sanctions for pursuing a statutory or constitutional right. See *Goodwin*, 457 U.S. at 376-77; *People v. Brexton*, 405 Ill. App. 3d 989, 996 (2010); *Hall*, 311 Ill. App. 3d at 911. No such presumption, however, automatically exists in the pretrial setting where a prosecutor has broad discretion in charging a defendant. *Brexton*, 405 Ill. App. 3d at 996; *Hall*, 311 Ill. App. 3d at 911; see *Goodwin*, 457 U.S. at 382-84.

¶ 17     To be clear, while we hold that such a presumption does not automatically exist in a pretrial setting, we do not foreclose the possibility that a pretrial presumption could nevertheless exist under unique circumstances. See *Goodwin*, 457 U.S. at 376, 380-81. Under the circumstances of the case *sub judice*, however, we decline to find such a presumption. Defendant has offered nothing more than the temporal sequence of events in support of her argument that a presumption should be found. This is clearly insufficient. Defendant's arguments that Fine and Ivy had never been contacted by the State's Attorney regarding the

underlying battery prior to reindictment,[3] that the "threat of liability *** prompted the government to go on the offensive," and that corporation counsel conferred with the State's Attorney regarding difficulty in settling the civil rights case and coordinated the subsequent indictment of defendant are also inadequate to trigger any presumption in her favor. This alleged evidence is unsupported by any citation to the record, and our own review of the record reveals no objective support for these assertions. In denying defendant's motion to dismiss the indictment, the trial court itself noted that the vast majority of defendant's proffered evidence was nothing more than speculation and educated guesses. For obvious reasons, this sort of evidence is of little value for the purposes of our analysis. In the same vein, to the extent that defendant takes issue with the fact that Detective Nega testified before the grand jury during the 2006 indictment as opposed to trial witnesses Officer Fine or detention aide Ivy is also of little importance. The record indicates that Detective Nega had been assigned to investigate the underlying case and that he had interviewed both of the victims on July 22, 2004. Moreover, the character of the evidence presented to the grand jury does not affect the validity of the indictment, and an indictment may be proper despite being based on solely hearsay. *People v. Fassler*, 153 Ill. 2d 49, 60 (1992).

¶ 18 Returning now to our finding that no presumption of vindictive prosecution should exist based on timing alone, we observe that the United States Supreme Court has stated that the "mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin*, 457 U.S. at 384. In fact, the United States Supreme Court has not yet found a presumption of vindictiveness in any pretrial context. Furthermore, various decisions by the Seventh Circuit Court of Appeals have held, under a variety of circumstances, that coincidental or even suspicious timing is insufficient to establish any prosecutorial animus due to the broad discretion afforded to a prosecutor at that stage. See *United States v. Pittman*, No. 10-2132, slip op. at 7-8 (7th Cir. June 15, 2011); *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006); *United States v. Falcon*, 347 F.3d 1000, 1005 (7th Cir. 2003). While we acknowledge that federal court decisions are not binding upon this court, such decisions can serve as persuasive authority. *People v. Haywood*, 407 Ill. App. 3d 540, 546 (2011). Here, defendant argues that the timing of events was suspicious; however, we note that on balance, the timing could just as easily have been coincidental. Even if we were to agree that the timing here was suspicious, we hold that mere opportunity for vindictiveness and speculation based on such an opportunity is insufficient evidence to establish a presumption of vindictiveness.

¶ 19 Moreover, we also observe that as a matter of policy, to hold that timing alone would be sufficient to find a presumption of vindictiveness would simply be too lax of a standard. We recognize prosecutorial vindictiveness as an important and valid basis for relief available to a defendant, but were a presumption of vindictiveness to be so easy to establish, abuse of that low bar would surely follow, opening the floodgate for suspects to strategically file civil suits

---

[3]We observe that pleadings within the record provide that Officer Fine and Ivy were absent on the August 14, 2004, court date because they were not working when notifications for the hearing were sent. The record indicates that Officer Fine was still recuperating from injuries allegedly sustained in the physical altercation with defendant.

against various government agencies as either a tool to gain leverage in negotiation or a precautionary measure in order to establish automatic presumptions of prosecutorial vindictiveness should they be prosecuted. This is not the result or behavior that this court seeks to validate or encourage.

¶ 20　　Where there is no presumption of prosecutorial vindictiveness, a defendant might nevertheless " 'prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do.' " (Emphasis omitted.) *Hall*, 311 Ill. App. 3d at 911-12 (quoting *Goodwin*, 457 U.S. at 384). This, however, is a rather heightened standard and we have held that a defendant bears the burden of production and persuasion when attempting to show actual prosecutorial vindictiveness, which requires: (1) objective evidence that the prosecutor had some animus or retaliatory motive; and (2) objective evidence that tends to show the prosecution would not have occurred absent that motive. *Hall*, 311 Ill. App. 3d at 913. Thereafter, the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons. *Goodwin*, 457 U.S. at 374. Defendant, however, has not satisfied her burden. To reiterate, defendant's argument revolves only around the timing of events and no more. As much as we might acknowledge defendant's argument that there is perhaps subjective evidence of animus, there is a clear shortage of objective evidence establishing both actual animus and that the prosecution would have not otherwise occurred. We have already discussed why timing alone would be an improper basis for finding a presumption of vindictiveness. For similar reasons, we find that timing alone is insufficient to carry the burden of proof in establishing actual vindictiveness.

¶ 21　　Defendant also briefly asserts that should this court find that no prosecutorial vindictiveness was established, she is entitled to an evidentiary hearing on the matter. Citing *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003), defendant argues that she is entitled to such a hearing if she offers "sufficient evidence to raise a reasonable doubt" that the prosecution was proper. *Falcon*, 347 F.3d at 1004. However, *Falcon* also held that the sufficient evidence must be objective evidence and that it must show the prosecutorial conduct at issue was motivated by some form of prosecutorial animus. We find insufficient objective evidence exists in this case to warrant a hearing. *Falcon* itself, which defendant relies upon, states "timing *** is not enough to shift the burden to the government or require a hearing." *Falcon*, 347 F.3d at 1005; see also *Cooper*, 461 F.3d at 856; *United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996). We see no compelling reason to relax this recognized standard in the case at bar. Accordingly, the trial court did not err in denying defendant's motion to dismiss based on allegations of prosecutorial vindictiveness.


¶ 22　　　　　　　　　　B. Cross-Examination of the State's Witnesses

¶ 23　　Defendant next contends that she is entitled to a new trial because the circuit court improperly precluded her from presenting evidence, through cross-examination, regarding the credibility of all three of the State's witnesses. Specifically, she argues that the State's witnesses had a motive to lie because they faced liability in a civil rights suit should defendant be found not guilty. The right to cross-examination is based on a criminal

defendant's constitutional right to confront the witnesses against him. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Crawford v. Washington*, 541 U.S. 36, 54 (2004). This right to cross-examination, however, is not absolute and the trial court retains broad discretion in determining the extent of the cross-examination at trial. *People v. Price*, 404 Ill. App. 3d 324, 330 (2010). While a defendant should be afforded the "widest latitude" in attempting to show a witness' bias or motive on cross-examination, the scope of such cross-examination nevertheless remains within the trial court's discretion. *People v. Robinson*, 349 Ill. App. 3d 622, 632-33 (2004). Furthermore, evidence used to impeach a witness must be timely, unequivocal and directly related, and may not be remote or uncertain. *People v. Leak*, 398 Ill. App. 3d 798, 822 (2010). Accordingly, a trial court's restriction of cross-examination will not be reversed absent an abuse of discretion. *Price*, 404 Ill. App. 3d at 330. We find no such abuse of discretion in this record.

¶ 24    During Officer Fine's cross-examination, the following colloquy took place between the trial court, Assistant State's Attorney John McNulty, and defense counsel George Pappas:

"Q. [Mr. Pappas]: Did you ever appear, other than today, did you ever appear in court to testify with respect to what happened to you that morning?

A. [Officer Fine]: No.

Q. When the defendant was charged, do you know whether she was scheduled to appear in response to those charges in Branch 50 at Grand and Central?

MR. MCNULTY: Objection.

THE COURT: Counsel, what's the relevance of this?

* * *

MR. PAPPAS: This case–and the only reason in my opinion this case is here because two years after this incident, an indictment was returned, Judge, and I made this argument before.

THE COURT: And that motion was dealt with.

MR. PAPPAS: That motion was dealt with.

THE COURT: That's not before me.

MR. PAPPAS: I understand that. It goes to the credibility of the witnesses, your Honor. Because up until now, they had absolutely no interest whatsoever–.

THE COURT: That's your conclusion.

MR. PAPPAS: Everything points in that direction.

THE COURT: Certainly that maybe [*sic*]. You asked here if she testified before today's date reporting this matter, and the answer is no. You can make logical inference and arguments based upon response by this witness to your question. As far as her knowing if something was charged or whatever is charged, objection is sustained.

* * *

Q. [MR. PAPPAS]: Approximately two years after this, were you served with a complaint charging you with striking the defendant.

-8-

MR. MCNULTY: Objection.

THE COURT: It may go to interest or bias. I will allow it.

THE WITNESS: Could you repeat it please.

Q. Approximately two years after this, were you served with a civil complaint in federal court, filed in federal court in Chicago charging you with excessive force against the defendant?

A. Yes."

Ivy was also questioned similarly:

"Q. [Mr. Pappas]: You never appeared up until today in a criminal courtroom, did you, to testify against the defendant with respect to these charges, am I correct?

A. Yes.

MR. MCNULTY: Objection.

THE COURT: I will allow it.

MR. PAPPAS: You never appeared?

THE COURT: Indicating yes she said until today.

MR. PAPPAS: Approximately two years after this incident, you were served with a lawsuits [*sic*] am I correct?

MR. MCNULTY: Objection.

THE COURT: I will allow it to go to interest or bias. You can answer the question. Overruled.

THE WITNESS: Yes.

MR. PAPPAS: Up until that point you had not testified against her in any proceeding, am I right?

A. Yes."

¶ 25    In our view, the quoted testimony speaks for itself. Defense counsel was allowed to elicit testimony from Officer Fine and Ivy that they did not testify regarding the case until they were served with a civil suit from defendant, approximately two years after the underlying criminal incident. Furthermore, the trial court allowed the questioning over the State's objections, explicitly indicating that the questioning was relevant to interest or bias. Defense counsel's questions clearly raised an inference challenging Officer Fine's and Ivy's credibility based on their respective potential liability in a civil rights suit filed by defendant. Any argument by defendant, therefore, that defense counsel was precluded from raising such an inference during cross-examination is baseless and accordingly, Officer Fine's and Ivy's cross-examinations were not improperly restricted.

¶ 26    As to Officer Meier's cross-examination, the following colloquy took place:

"MR. PAPPAS: When were you notified first that you were going to appear and testify in this case?

MR. MCNULTY: Objection.

THE COURT: Counsel, what's the relevance of this question

> MR. PAPPAS: I will attempt to connect it to the [*sic*] credibility.
>
> THE COURT: I will give you a little leeway on a couple of questions.
>
> THE WITNESS: Three months after the original occurrence happened.
>
> MR. PAPPAS: Was it after you were served with a civil suit filed against you by the defendant?
>
> MR. MCNULTY: Objection.
>
> MR. PAPPAS: Again it goes to credibility.
>
> THE COURT: I don't see it. You asked him when he was first notified to testify in this case, and I allowed leeway as to that question. Now we're talking about a civil suit which is not part of these proceedings which is irrelevant. Objection sustained.
>
> MR. PAPPAS: That's all I have."

We first observe defense counsel was explicitly allowed "leeway on a couple of questions." Defense counsel then elicited one answer relating to when Officer Meier was notified regarding the underlying case and then attempted to advance a question relating to defendant's civil rights lawsuit which the trial court sustained an objection to based on relevancy. Notably, defense counsel did not pursue any other questions to establish relevancy despite still having the opportunity to do so, as the trial court only sustained an objection to a specific question as opposed to completely barring any further questioning on the matter.

¶ 27    Importantly, it appears that the trial court did not see how the prior filing of a civil suit was relevant to when Officer Meier was merely *notified* that he would testify in the instant case. In contrast, Officer Fine and Ivy were asked during cross-examination as to when they actually testified regarding the case. After admitting that they had not testified at any previous proceeding, the trial court allowed questioning regarding the timing of the suit to establish interest or bias. The question advanced to Officer Meier was distinctly different because he was asked when he was *notified* he would be a witness, and he answered it was just three months after the underlying 2004 incident. Defendant's civil suit, however, was not filed until approximately two years later in 2006. Simply put, the 2006 civil suit could not have influenced an event (Officer Meier's notification) that occurred two years earlier. The trial court, therefore, properly sustained an objection as to defense's counsel's question and accordingly, we find no abuse of discretion by the trial court regarding the cross-examination of Officer Meier.

¶ 28                           C. Sufficiency of the Evidence

¶ 29    Defendant next contends that she was not proved guilty beyond a reasonable doubt. When reviewing the sufficiency of the evidence, the appropriate standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). It is not the function of this court to retry the defendant. *People v. Tenney*, 205 Ill. 2d 411, 428 (2002). Instead, it falls upon the trier of fact to judge the credibility of witnesses, resolve conflicts in the evidence, and draw conclusions

based on all the evidence. *People v. Bomar*, 405 Ill. App. 3d 139, 146 (2010).

¶ 30       Defendant presents a number of challenges to the evidence provided at trial. Primarily, she argues that the State's witnesses' testimony was completely implausible and "cannot possibly be believed." The vast majority of defendant's arguments, however, are based upon her own conclusory determinations of credibility. For example, she argues that it is "entirely implausible" for the State's witnesses to deny injuring defendant because her bruises must have been caused by the police officers during the various physical altercations that occurred. She further asserts that because she had to go to the hospital to have her hand examined, she "must have been injured by the police officers," and that no individual could perform the "irrational and potentially suicidal act" of attacking a police officer in a police station unless "they were out of their mind." Besides the fact that the evidence presents numerous alternative explanations to defendant's actions and injuries, her various attempts to offer her own evidentiary conclusions to the exclusion of all others is improper and largely ignores the applicable standard of review here. As stated, it is the trier of fact's duty to resolve questions involving the weight of the evidence or the credibility of witnesses. The degree of this deference is substantial and we will not substitute our judgment for that of the trier of fact's unless the evidence is so palpably contrary to the judgment or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Doll*, 371 Ill. App. 3d 1131, 1136 (2007).

¶ 31       Furthermore, whether defendant sustained her bruising before or during the events of July 22, 2004, is largely irrelevant in determining whether she battered Ivy and Officer Fine while in custody. The trial court itself noted it was not in a position to determine how and when defendant received her injuries or even how defendant's ex-husband's face was injured, but it deemed that Ivy's and Officer Fine's testimonies as to the battery were credible. Although defendant claims Ivy and Officer Fine offered "completely different versions" of the incident, our review of the record reveals such a statement to be an exaggeration. Officer Fine indicated that defendant struck her and then resisted being put in a holding cell by going to the ground, kicking, and swinging her arms around. Officer Fine, however, did not specifically indicate in what order those actions occurred. Ivy indicated that while attempting to place defendant into a holding cell, defendant "started fighting, scratching and kicking us both," later stating she was kicking when on the ground and also while standing up. Ivy also testified that they were able to subdue defendant and put her on the ground. We see no clear inconsistency here and nothing that would, as defendant alleges, "completely undermine" the witnesses' credibility. Instead, the State's witnesses clearly established that defendant had been drinking, was involved in a physical altercation with her then-husband, resisted arrest, and was physically uncooperative and combative while being processed by Ivy and Officer Fine. We have held that the testimony of even a single witness, if positive and credible, is sufficient to convict even if it is contradicted by the defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trial court here found Ivy and Officer Fine to be credible and we find no reason to disturb that determination. After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the underlying offenses were proven beyond a reasonable doubt. Accordingly, defendant was properly convicted.

¶ 32  For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33  Affirmed.