No. 2--02--1152

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

THE VILLAGE OF LAKE VILLA, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellee, )

) 

v. ) No. 01--TR--94706

)

) Honorable

JAMES J. BRANSLEY, ) Wallace B. Dunn and

) Diane E. Winter,

Defendant-Appellant. ) Judges, Presiding.

_________________________________________________________________________________

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

The Village of Lake Villa (Village) charged defendant, James J. Bransley, with operating a vehicle (a motorcycle) with a suspended driver's license.  625 ILCS 5/6--303(a) (West 2000)
.  Defendant was found guilty following a bench trial in the circuit court of Lake County and was sentenced to a one-year period of conditional discharge and a $500 fine.  Defendant argues on appeal that the Village failed to prove his guilt beyond a reasonable doubt because it did not prove that he operated the motorcycle on a highway.  Defendant further argues that the trial court erred in failing to appoint counsel to represent him.   We affirm.

Defendant was arrested on July 2, 2001.  It is undisputed that his driver's license was suspended at that time and that he was operating a motorcycle on streets located in Unit 3 of the Painted Lakes subdivision in the Village.  
Defendant was originally represented by private counsel and he pleaded guilty to the charge.  However, he successfully moved, 
pro se
, to withdraw his plea, and the matter was set for trial on April 22, 2002.  On that date, defendant filed a certificate of assets indicating that he and his wife were unemployed and essentially had
 no assets.  There is no transcript of the proceedings in open court on that date, but the matter did not proceed to trial.

On April 29, 2002, defendant filed a motion to dismiss, claiming that he committed no offense because he was riding on a private road.  After an evidentiary hearing on May 14, 2002, the trial court denied the motion.  The matter proceeded to a bench trial on August 5, 2002.   The recorded plat for Unit 3 of the Painted Lakes subdivision was admitted into evidence.  The plat shows that the streets where defendant operated his motorcycle were dedicated to the Village, and it contains the Village's certificate (dated February 12, 1997) accepting the dedication.  The parties also stipulated to the admission of a letter dated January 7, 2002, from the Village's treasurer, stating:

"As of this date the Village of Lake Villa has not accepted the subdivision improvements in the Painted Lakes Subdivision.  However, the Village of Lake Villa does hold a cash deposit as a guarantee that the required subdivision improvements will be completed."

The record contains a copy of a Lake Villa ordinance providing that, before applying for a final plat, a subdivider shall submit to the Village clerk a "statement of agreement" providing, 
inter alia
, that within two years after approval of the plat, the subdivider will complete all improvements in accordance with plans and specifications approved by the Village engineer and that "[t]he roadways remain the responsibility (including maintenance and snowplowing) of the developer until accepted by the Village Board."  Lake Villa Municipal Code §11--1--5(H)(1)(a).

As noted, the trial court found defendant guilty.  Defendant unsuccessfully moved for reconsideration, and this appeal followed.

Section 6--303(a) of the Illinois Vehicle Code (Code) provides, in pertinent part, that "[a]ny person who drives or is in actual physical control of a motor vehicle 
on any highway of this State
 at a time when such person's driver's license *** is *** suspended *** shall be guilty of a Class A misdemeanor."  (Emphasis added.)  625 ILCS 5/6--303(a) (West 2000)
.   For purposes of the Code, "highway" means "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."  625 ILCS 5/1--126 (West 2000).  Defendant contends that the streets where he rode his motorcycle were not publicly maintained but, rather, were maintained by the developer of the subdivision in which the streets are located.  We disagree.

The streets in question appear on a subdivision plat acknowledged by the owners of the land and recorded by the Lake County recorder of deeds.  The plat shows that the streets were dedicated to the Village.  Section 3 of the Plat Act provides that "[t]he acknowledgment and recording of such plat *** shall be held in all courts to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to *** any *** body politic *** to such donee or grantee, for their use or for the use and purposes therein named or intended, and for no other use or purpose; and the premises intended for any street, alley, way, common or other public use in any city, village or town, or addition thereto, shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended."  765 ILCS 205/3 (West 2000).  In 
La Salle National Bank v. City of Chicago
, 19 Ill. App. 3d 883, 886 (1974), the court observed:

"When an owner of land lays it out in lots and blocks with streets and alleys and has it platted, the municipality acquires no rights in the streets and alleys until it accepts them. [Citation.] Nor does the recording of the plat of subdivision transfer any rights to the municipality without an acceptance. [Citation.] Acceptance may be either express or implied.  An express acceptance may be shown by some order, resolution or action of the public authorities made and entered of record ***."

Here, the Village expressly accepted the dedication; its acceptance is documented in a certificate appearing on the plat.  Therefore, the Village held title in fee simple to the dedicated portions of the subdivided land.  Although evidence was presented that the Village did not "accept" 
the improvements
 in the subdivision, we do not believe this circumstance has any bearing on the effectiveness of the dedication or the Village's resultant property interest.  Rather, "acceptance" of the improvements appears to be significant primarily with respect to the subdivider's contractual obligation to the Village to develop the land in accordance with approved plans.

Defendant argues, however, that whether the streets are "highways" depends not on whether they were publicly owned, but on whether they were publicly maintained.  Consistent with defendant's view, it has been held that a parking lot that was publicly maintained and open to use by the public for vehicular travel would constitute a "highway" even if the parking lot was on privately owned property.  
People v. Culbertson
, 258 Ill. App. 3d 294, 297 (1994).  We agree with defendant that the relevant question in this case is whether the streets in question were "publicly maintained" within the meaning of the statute, but we disagree as to the answer to that question.

Resolution of this appeal depends on the meaning of the term "publicly maintained"; the question is thus one of statutory construction.  The primary purpose of statutory construction is to determine and give effect to the legislature's intent, while presuming the legislature did not intend to create absurd, inconvenient, or unjust results.  
In re B.L.S.
, 202 Ill. 2d 510, 514-15 (2002).  Legislative intent is determined by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law.  
Carver v. Sheriff of La Salle County
, 203 Ill. 2d 497, 507 (2003).  However, courts must avoid reading statutory language either too literally or too broadly, and must try to garner what the legislature intended.  
In re Petition of K.M.
, 274 Ill. App. 3d 189, 195 (1995).  While penal statutes are to be strictly construed in favor of the accused, they must not be construed so rigidly as to defeat the intent of the legislature.  
People v. Tellez
, 295 Ill. App. 3d 639, 643 (1998).

The abstract meaning of the language at issue here presents no difficulties.  "Maintain" means "to keep in a state of repair, efficiency, or validity : preserve from failure or decline."  Webster's Third New International Dictionary 1362 (1993).  "Publicly" means "by the public : by the people generally : COMMUNALLY *** : 
by a government
."  (Emphasis added.)  Webster's Third New International Dictionary 1836 (1993).
  The obvious purpose of section 6--303(a) of the Code is to protect the public from unsafe or irresponsible motorists by penalizing those who operate vehicles while their driver's licenses have been suspended.  While this is a penal statute, it should not be read so narrowly as to defeat this objective.  Applying these principles, we conclude that the Village's role in ensuring the maintenance of the streets in question justifies characterizing the streets as "publicly maintained."  The Village owned the streets pursuant to a statutory dedication and held them in trust for use by the public.  As seen, pursuant to a Village ordinance, the subdivision developer was required to agree that improvements to the land would be completed in accordance with plans and specifications approved by the Village engineer and to complete the  improvements within a given time frame.  The ordinance also provided that "[t]he roadways shall remain the responsibility (including maintenance and snowplowing) of the developer until accepted by the Village Board."  Lake Villa Municipal Code §11--1--5(H)(1)(a).
  While the Village may not have immediately
 assumed 
direct
  responsibility for the maintenance of the streets, it made provision for them to be maintained by its contract with the developer.  Units of government routinely contract with private entities to maintain public ways.  Such contracts do not transform public highways to private roads.  The fact that this contract was part of the overall development agreement does not alter the analysis.  In this sense, we believe that the developer, in carrying out its contractual responsibility to maintain the roadways, acted under the aegis of the Village and essentially performed a public function.  Thus, we conclude that the streets in question were publicly maintained even if maintenance was not physically undertaken by Village employees or coordinated by a department of the Village government.

To hold otherwise could yield anomalous results.  Clearly the streets in question were not private roads, which are "[e]very way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons."  625 ILCS 5/1--163 (West 2000).  Section 11--209.1(a) of the Code provides in pertinent part:

"Any person or board of directors owning, operating or representing a residential subdivision, development, apartment house or apartment project, containing a minimum of 10 apartments or single family residences may file a written request, with the appropriate local authority wherein such property is situated, requesting their law enforcement agency enforce the provisions of this Code on all private streets or roads open to or used by the tenants, owners, employees or the public for purposes of vehicular traffic by permission of such person or board of directors and not as a matter of public right.  Notwithstanding Section 1--126 *** of this Code, if the local authority grants such request by the adoption of an enabling ordinance then all such private streets or roads shall be considered 'highways' only for the enforcement purposes of this Code."  625 ILCS 5/11--209.1(a) (West 2000).

We see no reason why the General Assembly would provide for the enforcement of traffic laws on purely private streets or roads, but make no such provision with respect to dedicated public streets and roads temporarily being maintained by a subdivision developer under an agreement with a municipality.  As such, we conclude that such streets and roads are highways.  Accordingly, there was sufficient evidence to establish defendant's guilt beyond a reasonable doubt.

Defendant next argues that the trial court erred in failing to appoint counsel to represent him.  The record on appeal is insufficient to facilitate review of the contention.  The record on appeal contains no transcript of the proceedings in open court on April 22, 2002, the date when defendant filed the certificate of assets that is the basis for his contention that he was entitled to appointed counsel.  Without knowing what transpired on that date, it is impossible to evaluate defendant's claim.  The appellant has the burden of providing an adequate record on appeal, and where the record is incomplete, there is a presumption in favor of the trial court's ruling.  
People v. Balaj
, 265 Ill. App. 3d 1070, 1079 (1994).  Accordingly, we must presume that whatever occurred on April 22, 2002, did not mandate the appointment of counsel.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and GILLERAN JOHNSON, JJ., concur.