2018 IL App (4th) 150802

NO. 4-15-0802

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 20, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JOSEPH M. JOPHLIN, | ) | No. 14CF850 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion
Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1     In June 2015, a jury found defendant, Joseph M. Jophlin, guilty of aggravated driving under the influence of alcohol (aggravated DUI), a Class 2 felony (625 ILCS 5/11-501(d)(1)(A), (d)(2)(B) (West 2014)), and driving while license revoked or suspended with three prior convictions for driving while license revoked or suspended (DWR), a Class 4 felony (*id.* § 6-303(d-3)). In September 2015, the Macon County circuit court sentenced defendant to four years and two years in prison to run concurrently and ordered defendant to pay specific fines, fees, and assessments. Defendant appeals, arguing (1) the State presented insufficient evidence to support his conviction for aggravated DUI and DWR; (2) the State engaged in vindictive prosecution when it charged him with the more serious offense of aggravated DUI, a Class 2 felony, on the morning of trial, to punish him for exercising his right to a jury trial; (3) the State's repeated violation of the court's *in limine* order deprived him of his right to a fair trial;

and (4) the circuit clerk improperly imposed numerous fines. We affirm in part and vacate in part.

¶ 2                                      I. BACKGROUND

¶ 3        In July 2014, the State charged defendant by information with aggravated DUI, a Class 4 felony (*id.* § 11-501(d)(1)(G), (d)(2)(A)) (count I), and DWR with three prior convictions for DWR, a Class 4 felony (*id.* § 6-303(d-3)) (count II). The charges alleged that, on July 20, 2014, defendant drove or was in actual physical control of a motor vehicle while under the influence of alcohol (*id.* § 11-501(a)(2)), on a highway of Illinois, during a period in which defendant's driving privileges were revoked (*id.* § 6-303(a)).

¶ 4                                     A. Pretrial Hearing

¶ 5        At a pretrial hearing on December 12, 2014, the State requested an additional pretrial hearing because defendant had a pending case not yet on file in another county. Defense counsel informed the trial court the reason for the additional hearing was because the State intended to file an additional charge against defendant for aggravated DUI, a Class 2 felony (*id.* § 11-501(d)(1)(A), (d)(2)(B)) (count III). Defense counsel indicated the change in classification was "based on the defendant's request for a jury trial." The State did not respond to defense counsel's comment. The trial court did not inquire further.

¶ 6                                   B. Defendant's Jury Trial

¶ 7        Below, we summarize the testimony elicited during defendant's June 23, 2015, jury trial.

¶ 8                              1. *Defendant's Motion* in Limine

¶ 9        On the morning of trial, defense counsel filed a motion *in limine* to exclude evidence relating to results of a preliminary breath test, defendant's prior convictions for DUI,

and any evidence offered to "boost the credibility" of the investigating officers, such as evidence of the number of DUI arrests made by the officers or evidence the officers did not arrest everyone stopped for suspected DUI. The trial court ordered, "The state shall not be allowed to introduce into evidence the results of the defendant's preliminary breath test or the defendant's prior convictions for DUI or driving on a revoked or suspended license."

¶ 10                                    2. *Count III*

¶ 11          After the trial court ruled on defendant's motion *in limine*, the State moved to file count III, charging defendant with aggravated DUI, a Class 2 felony (*id.*), the aggravating factor being defendant had two prior DUI convictions in 2008 and 2011. Defense counsel stated, "I don't believe there's any basis to object to that, Your Honor." The State moved to dismiss count I with no objection from defense counsel. The State informed the trial court defendant was offered the opportunity to plead "open" to count I prior to filing count III, but defendant rejected the offer. The trial court told defendant he was "taking a risk" by rejecting the deal on the Class 4 felony and proceeding to trial on a Class 2 felony. Defendant acknowledged he understood, and the case proceeded.

¶ 12                          3. *Civilian Witnesses' Testimony*

¶ 13          The State called David Karius as a witness. Karius, a P&V gas station employee, testified he had worked at the P&V gas station in Macon, Illinois, for 15 years. On July 20, 2014, Karius testified he was on duty around 3 a.m. when he observed a maroon vehicle enter the gas station parking lot and pull up to gas pump five directly in front of him. Karius was outside when the vehicle pulled up and stated there was only one person in the vehicle. Karius estimated the vehicle remained at the gas pump for roughly 20 or 30 minutes before the vehicle started to overheat, causing it to smoke and leak fluid.

¶ 14        Two gas station patrons approached the vehicle to wake the driver but did not get a response. Karius then called the sheriff's department to report an overheating vehicle with an unresponsive driver. At some point after Karius called the police, a friend of Karius arrived, opened the door to the vehicle, and "shook the driver awake." Karius said the driver woke up and came into the gas station to use the restroom. Karius identified the driver of the vehicle as defendant, Joseph M. Jophlin.

¶ 15        The State next called Austin Webb as a witness. Webb testified he was a customer of the gas station on July 20, 2014. Webb, upon arriving at the gas station, noticed a smoking vehicle at one of the gas pumps. Webb was worried and tried to wake the driver. Webb first tried tapping on the window but did not get a response. Then, Webb hit the roof of the vehicle. Webb still did not get a response, so he opened the door and shook the driver awake. The driver got out of the vehicle and went into the gas station. Webb identified the driver as defendant and noted he was the only one in the vehicle.

¶ 16        The State next called Shelby Cohn as a witness. Cohn testified she accompanied Webb to the gas station on July 20, 2014. Cohn said, when they arrived, she noticed a vehicle overheating in the lot. Cohn observed Webb try to wake up the driver as well as turn the vehicle off. Cohn identified the driver as defendant and as the only occupant of the vehicle. Cohn said, when defendant got out of the vehicle, he "seemed very out of it, very incoherent."

¶ 17                           *4. Police Witnesses' Testimony*

¶ 18        The State called Detective Roger Pope Jr. as a witness. Detective Pope testified he had been with the Macon County Sheriff's Department for 13 years and had been on duty the morning of July 20, 2014. Detective Pope was dispatched to the P&V gas station for an individual passed out in an overheating vehicle. Upon arrival, Detective Pope observed a maroon

Chevy Lumina at pump five with no one inside. Detective Pope went inside the gas station and observed the clerk and another individual, later identified as defendant.

¶ 19 Detective Pope testified he had encountered intoxicated individuals previously in his employment. Defense counsel objected to this testimony saying, "I'm going to object on the basis of my previous motion." The trial court declined to allow a sidebar and overruled the objection, noting it was proper foundation for the officer's opinion regarding defendant's intoxication. Detective Pope continued, stating he worked the third shift and over his career he had encountered "a few thousand" intoxicated individuals.

¶ 20 Detective Pope opined defendant was "extremely intoxicated" on July 20, 2014. Defendant displayed a slow reaction in answering questions and exhibited a "dazed stare" when Detective Pope spoke to him. Defendant told Detective Pope he consumed alcohol earlier in the evening. Defendant smelled of alcohol and had red, bloodshot eyes. Defendant denied the vehicle belonged to him; rather, the vehicle belonged to a friend, but he stated he had permission to drive it. It was later determined the vehicle belonged to defendant's mother. Defendant stated he had been in Decatur, Illinois, earlier in the evening and several times told Detective Pope, "I never told you I drove." Detective Pope, after speaking with defendant, turned the case over to Deputy Sheriff Matt Jedlicka.

¶ 21 The State next called Deputy Sheriff Matt Jedlicka as a witness. Deputy Sheriff Jedlicka testified he had been with the Macon County Sheriff's Department going on 11 years and was dispatched to the P&V gas station on July 20, 2014, to check on the welfare of a male asleep in a vehicle. Deputy Sheriff Jedlicka made contact with defendant after arriving at the gas station. Defendant told Deputy Sheriff Jedlicka he had consumed "a few" Bud Light beers earlier in the evening at a bar called Sliderz in Decatur, Illinois. Defendant denied driving and denied

being asleep or woken up by anyone. Defendant refused to perform a field sobriety test and was put under arrest. Once at jail, defendant declined chemical analysis of his body.

¶ 22    The State asked Deputy Sheriff Jedlicka, in the course of his work, how many times he had encountered intoxicated individuals. Defense counsel objected for the same reason as he did for Detective Pope, which the trial court overruled. Deputy Sheriff Jedlicka testified his best estimate was he would observe 20 to 30 intoxicated persons per week in conjunction with his duties as a sheriff's deputy. Deputy Sheriff Jedlicka testified to defendant's eyes being red, to a smell of alcohol coming from defendant, and to defendant exhibiting a "slight hesitation" when answering questions.

¶ 23                    5. *Stipulation*

¶ 24    At the close of the State's case, the trial court read into evidence the parties' agreed upon stipulation to defendant's driving abstract showing his driver's license revoked on July 20, 2014.

¶ 25                    6. *Jury Verdict*

¶ 26    After the jury deliberated for 40 minutes, the jury found defendant guilty on both counts.

¶ 27                    C. Posttrial Proceedings

¶ 28                    1. *Posttrial Motion*

¶ 29    In July 2015, defendant filed a motion for a new trial or, in the alternative, judgment notwithstanding the verdict. Defendant argued, *inter alia*, the trial court erred in overruling objections to testimony regarding the officers' prior DUI experiences, which sought to boost the witnesses' credibility, because the testimony was barred by the *in limine* order. Defense counsel further argued the trial court erred in denying his contemporaneous request for a

sidebar to explain the basis for his objections. Defense counsel argued defendant was entitled to a new trial because a violation of the motion *in limine* denied defendant a fair trial.

¶ 30 In September 2015, the trial court held a hearing on the posttrial motion. The court explained the testimony in reference to the *in limine* order came out in the context of the officers' prior DUI investigations, so it was "certainly admissible." In reference to defense counsel requesting a sidebar, the court explained sidebars are a "bad idea" because they prevent the court from making a record. The court stated defendant received a fair trial and there was "more than sufficient evidence to support the verdicts" and denied defendant's motion.

¶ 31 2. *Sentencing*

¶ 32 The trial court sentenced defendant to two years of imprisonment and one year of mandatory supervised release on count II and a concurrent term of four years' imprisonment followed by two years of supervised release on count III. The court ordered defendant to pay (1) a $1000 alcohol enforcement fee, (2) a $100 trauma center trust fund fee, (3) a $5 spinal cord research fee, and (4) a $250 DNA fee. The court's written sentencing order was silent as to financial obligations. In a document not signed by the court, defendant was assessed the following: (1) $50 court finance assessment, (2) $5 youth diversion assessment, (3) $270 lump-sum surcharge, (4) $28.50 child advocacy fee, (5) $10 medical costs assessment, (6) $15 CASA (court-appointed special advocate) assessment, (7) $100 violent crime victims assistance assessment, (8) $108 drivers education assessment, (9) $9.50 nonstandard assessment, (10) $15 fire prevention assessment, (11) $15 firetruck lane fund, (12) $50 roadside memorial assessment, (13) $15 state police operations assessment, (14) $4.75 drug court assessment, (15) $17 clerk op add-ons, (16) $70 state's attorney assessment, and (17) $10 state police services assessment.

¶ 33 This appeal followed.

¶ 34                                     II. ANALYSIS

¶ 35        On appeal, defendant argues (1) the State presented insufficient evidence to support his conviction for aggravated DUI and DWR; (2) the State engaged in vindictive prosecution when it charged him with the more serious offense of aggravated DUI, a Class 2 felony, on the morning of trial to punish him for requesting a jury trial; (3) the State's repeated violation of the court's *in limine* order deprived him of his right to a fair trial; and (4) the circuit court improperly imposed numerous fines. We address these issues in turn.

¶ 36                         A. Sufficiency of the Evidence

¶ 37        Defendant argues this court should reverse his conviction because the State lacked sufficient evidence to convict him of aggravated DUI and DWR beyond a reasonable doubt. The State responds by quoting the trial court where it noted there was "more than sufficient evidence to support the verdicts." We agree with the trial court.

¶ 38        When a reviewing court considers a challenge to the sufficiency of the evidence it must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court generally will not substitute its judgment for the trier of fact's where the trier of fact determines the credibility of the witnesses, the weight to be given to the testimony, and the inferences drawn from the evidence. *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. A reviewing court will reverse a conviction only where the evidence is so improbable and unsatisfactory it creates a reasonable doubt as to defendant's guilt. *Id.*

¶ 39                         1. *Driving While License Revoked*

¶ 40    A person commits the offense of driving while license revoked or suspended with three prior convictions for driving while license revoked or suspended when he drives or is in actual physical control of a motor vehicle on a highway of the state, at a time when his driver's license is revoked, and he has three times previously received a conviction for DWR. 625 ILCS 5/6-303(d-3) (West 2014). The parties have stipulated to defendant's license being revoked on July 20, 2014, but defendant argues the State failed to prove on July 20, 2014, he drove a motor vehicle on a highway of the state. Defendant does not dispute his prior convictions for DWR.

¶ 41    Defendant argues the State failed to show defendant drove on a highway of the state because the State did not establish defendant entered the gas station's private parking lot from a public road rather than from an adjacent private parking lot. The State cites *Village of Lake Villa v. Bransley*, 348 Ill. App. 3d 280, 282-83, 809 N.E.2d 816, 818-19 (2004), in arguing the term "highway" has been broadly interpreted to include streets and parking lots on privately owned property, so long as they are publically maintained and open to public use. In *Bransley*, the defendant was convicted of operating a motorcycle, on an expired license, in a subdivision. *Id.* at 282. The defendant argued he was riding on a private road. Unbeknownst to defendant, the Village of Lake Villa, Illinois, held title to the streets in the subdivision and contracted to the developer of the subdivision the job of maintaining the streets. *Id.* at 282-84.

¶ 42    P&V gas station is open to public use, but the State did not provide any evidence showing a body of government directly maintains or contracts for the maintenance of the gas station. The State's argument is distinguishable from *Bransley* where it failed to provide evidence on maintenance. The State does, however, provide evidence defendant had been in Decatur, Illinois, prior to arriving at the gas station, and we conclude defendant fails to give sufficient weight to the testimony presented at trial on this fact.

¶ 43        Prior case law has also established "[a] person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control." *City of Naperville v. Watson*, 175 Ill. 2d 399, 402, 677 N.E.2d 955, 957 (1997). "[I]ndividuals discovered sleeping in vehicles have been found to be in actual physical control." *Id.* Even individuals asleep in vehicles where the vehicle is not running and the keys are not in the ignition have been found to be in actual physical control. *People v. Morris*, 2014 IL App (1st) 130152, ¶¶ 18-19, 16 N.E.3d 269.

¶ 44        Karius testified he saw defendant drive into the P&V gas station parking lot around 3 a.m. on July 20, 2014, and was the only person in the vehicle. Karius observed defendant asleep in the driver's seat while the vehicle was running. Two other witnesses also testified to defendant being the only occupant of the vehicle and the vehicle running while defendant was asleep in the driver's seat. Defendant told both Detective Pope and Deputy Sheriff Jedlicka he had been in Decatur, Illinois, earlier in the evening.

¶ 45        All of this testimony combined is enough for a reasonable jury to find, beyond a reasonable doubt, defendant drove or was in actual physical control of a vehicle and traveled from Decatur, Illinois, to Macon, Illinois, by using public roads. Based on the testimony elicited at trial, the State presented sufficient evidence to sustain defendant's conviction for DWR.

¶ 46                    2. *Aggravated Driving Under the Influence*

¶ 47        A person commits the offense of aggravated DUI, a Class 2 felony, when he drives or is in actual physical control of a vehicle while under the influence of alcohol and has at least two prior DUI convictions. 625 ILCS 5/11-501(d)(1)(A), (d)(2)(B) (West 2014). We defer to the argument above concerning defendant driving or being in actual physical control of a vehicle on July 20, 2014. Here, defendant argues the State did not provide sufficient evidence he

was intoxicated on July 20, 2014, because no direct evidence showed defendant's blood alcohol content. Defendant did not dispute his two prior convictions for DUI.

¶ 48            To prove a defendant committed the crime of DUI, the State may rely on circumstantial evidence. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 24, 2 N.E.3d 333. The testimony of a single officer is sufficient to sustain a conviction of DUI. *Id.* We are mindful the testimony of a single witness must be positive and credible to convict, but contradiction by defendant does not diminish the weight of the testimony. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228, 920 N.E.2d 233, 242 (2009).

¶ 49            Defendant declined to perform a field sobriety test and declined chemical testing to determine his blood alcohol content, so the only evidence left for the State to use was circumstantial evidence. While it only takes one credible witness's testimony to convict, here, there are multiple witnesses who testified to defendant's actions and demeanor on July 20, 2014.

¶ 50            Karius watched defendant drive into the gas station and fall asleep while his vehicle overheated. Webb could not easily rouse defendant awake despite defendant's vehicle overheating and Webb banging on the vehicle window and roof. Rather, Webb physically shook defendant awake. Cohn described defendant as "very out of it, very incoherent." Detective Pope noted defendant answered questions very slowly, had a "dazed stare," smelled like alcohol, and had red, bloodshot eyes. Deputy Sheriff Jedlicka testified to defendant's eyes being red and defendant smelling of alcohol. Defendant also told both officers he had consumed alcohol earlier in the evening.

¶ 51            Despite multiple witnesses testifying to defendant's actions and demeanor, defendant argues the State failed to produce evidence of defendant's blood alcohol content and failed to produce video surveillance from the night in question. These facts do not undermine the

State's argument because the evidence above, taken in consideration together, is sufficient to prove defendant was intoxicated on July 20, 2014. The evidence and testimony also align with prior case law in this area, where individuals found asleep in vehicles with the engine running and without the engine running while exhibiting signs of intoxication have been found guilty of a DUI. *Watson*, 175 Ill. 2d at 405; *Morris*, 2014 IL App (1st) 130152, ¶ 29.

¶ 52   We find the State presented sufficient evidence for the jury to conclude, beyond a reasonable doubt, defendant drove a vehicle while intoxicated on July 20, 2014, and we sustain defendant's conviction for aggravated DUI.

¶ 53                                  B. Vindictive Prosecution

¶ 54   Defendant next argues the State engaged in vindictive prosecution when it filed count III, aggravated DUI, a Class 2 felony, on the morning of trial, as a replacement for count I, aggravated DUI, a Class 4 felony. Defendant argues the more serious charge was filed in retaliation for defendant's decision to proceed to a jury trial. The State strongly denies the assertion of vindictive prosecution and states the change in charge was permissible as part of plea bargaining negotiations. We agree with the State.

¶ 55   Vindictive prosecution claims present questions of law and fact. *People v. Hall*, 311 Ill. App. 3d 905, 910, 726 N.E.2d 213, 218 (2000). The trial court's legal conclusions are reviewed *de novo*, but a reviewing court will not disturb the trial court's findings of fact unless clearly erroneous. *Id.*

¶ 56                                  1. *Forfeiture*

¶ 57   Defendant failed to raise the allegation of vindictive prosecution at trial or in a posttrial motion. The argument is forfeited on review. See *People v. Sebby*, 2017 IL 119445, ¶ 48; 89 N.E.3d 675. Defendant argues he is entitled to relief under plain-error review.

¶ 58                          2. *Plain-Error Review*

¶ 59         The plain-error doctrine provides a narrow exception to the general forfeiture rule. *Id.* Under plain-error review, we will reverse a forfeited error if the error was clear and obvious and either (1) the evidence was so closely balanced the error alone threatened to tip the scales of justice against defendant or (2) the error was so serious it affected the fairness of defendant's trial and challenged the integrity of the judicial process. *Id.* We first look to see whether an error occurred. *Id.* ¶ 49.

¶ 60         A prosecution is "vindictive" and violates due process of law if undertaken merely "[t]o punish a person because he has done what the law plainly allows him to do." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Defendant argues the State engaged in vindictive prosecution when it filed a more serious Class 2 felony charge against him after he requested a jury trial. While the State filed the more serious charge on the morning of trial, defendant fails to mention the additional charge was filed only after defendant had the opportunity to plead "open" to count I prior to filing count III and he declined.

¶ 61         Due process is not violated by all possibilities of increased punishment but rather only by those that pose a realistic likelihood of actual vindictiveness. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). The United States Supreme Court has held a presumption of prosecutorial vindictiveness adheres where a prosecutor brings additional and more serious charges against a defendant after defendant has been convicted of an offense and the court has overruled his conviction. *Goodwin*, 457 U.S. at 381. No such presumption arises in the pretrial setting where the prosecutor has broad discretion in charging a defendant. *Id.* at 381-82. A coincidence of timing, or even the presence of suspicious timing, is not sufficient to establish prosecutorial

- 13 -

animus because broad discretion is granted to the prosecutor at the pretrial stage. *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 18, 957 N.E.2d 543.

¶ 62        This case is analogous to *Rendak*, where the defendant argued the timing of the refiling of criminal charges against her raised the presumption of vindictive prosecution because the criminal charges were refiled after she filed a civil rights suit against the City of Chicago. *Id.* ¶ 16. The First District disagreed, explaining timing alone of the filing of charges was not sufficient to prove vindictiveness. *Id.* ¶ 20. Here, the State's filing of count III prior to trial does not give rise to vindictive prosecution where defendant had previously been given an opportunity to plead "open" to count I before count III was filed.

¶ 63        In the absence of a presumption of vindictiveness, defendant must prove a heightened standard applies showing (1) objective evidence the prosecutor had some animus or retaliatory motive and (2) objective evidence the prosecution would not have occurred absent the motive. *Id.* Defendant argues there is objective evidence of vindictiveness because the State filed the more serious charge after attempts to negotiate a plea agreement were unsuccessful.

¶ 64        This case is also similar to *Goodwin*, where a pretrial decision was made to modify the charges after respondent declined to plead guilty during plea negotiations and requested a jury trial. *Goodwin*, 457 U.S. at 371. The outcome of *Goodwin*, as in *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978), was mandated by the Court's acceptance of plea negotiations as a legitimate process. Hence, "additional" charges could not necessarily be characterized as an impermissible "penalty." *Goodwin*, 457 U.S. at 378-79 (discussing *Bordenkircher*). The *Goodwin* Court determined no vindictive prosecution occurred where the prosecution has broad discretion before trial and where the prosecution never suggested the charge be brought to influence the respondent's conduct. *Id.* at 380-81. Here, the State never

- 14 -

suggested the Class 2 felony charge was brought to influence defendant to plead guilty and not go to trial; rather it was brought because defendant had two prior DUI convictions. The instant case falls squarely within the *Goodwin* and *Bordenkircher* analysis.

¶ 65 Defendant was given a chance to plead "open" to the lesser charge before his case went to a jury trial, and he declined to do so. Prior to trial, the trial court judge even told defendant he was "taking a risk" by rejecting the deal on the Class 4 felony and proceeding to trial on the Class 2 felony. Defendant acknowledged he understood the risk. Defendant's additional charge did not give rise to vindictive prosecution. Finding no error, we need not proceed with the plain-error analysis.

¶ 66                     3. *Ineffective Assistance of Counsel*

¶ 67 Defendant attempts to get around forfeiture by arguing the failure to object to the filing of count III denied him effective assistance of trial counsel. Claims of ineffective assistance of trial counsel are reviewed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must prove (1) counsel's performance was deficient, as it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced defendant. *Id.* at 687.

¶ 68 Defendant's argument fails because, as noted above, no objective evidence supported defendant's allegations of vindictiveness. It also was not unreasonable for trial counsel to choose not to raise this issue in order to preserve it on appeal. The result would not have been different had counsel preserved this claim. Defense counsel's failure to object to filing of the more serious charge on the morning of trial does not constitute ineffective assistance of counsel.

¶ 69                     C. Abuse of Discretion

¶ 70 Defendant next argues the trial court abused its discretion when it denied defendant's motion for a new trial. Defendant argues he was denied his right to a fair trial when the State, at trial, brought up evidence barred by an *in limine* order. The State responds by arguing the officers' testimony was not barred by the *in limine* order because it was admissible as foundation for the officers' opinion testimony regarding defendant's intoxication. We agree with the State.

¶ 71 The denial of a motion for a new trial will not be disturbed on review in the absence of a showing the trial court abused its discretion. *People v. Hall*, 194 Ill. 2d 305, 343, 743 N.E.2d 521, 543 (2000). An abuse of discretion will be found " 'where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Patrick*, 233 Ill. 2d 62, 68, 908 N.E.2d 1, 5 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000)).

¶ 72 Defendant filed a pretrial motion *in limine*, arguing, *inter alia*, the State should be precluded from offering evidence to "boost the credibility" of its police witnesses by presenting evidence of their prior DUI experience. The trial court granted the motion *in limine* in its entirety. The trial court did not speak to this issue when granting the motion. An *in limine* motion allows a party to obtain an order before trial excluding inadmissible evidence and prohibiting interrogation concerning evidence without the necessity of having the questions asked and objections made in front of the jury. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 549, 416 N.E.2d 268, 271 (1981).

¶ 73 To the extent the trial court's order *in limine* is not clear and there is a difference of opinion regarding its boundaries, it is proper for the trial court to clarify its order during trial where the court's ruling on a motion *in limine* is an interlocutory order and always subject to

reconsideration during trial. *People v. Drum*, 321 Ill. App. 3d 1005, 1008, 748 N.E.2d 344, 347 (2001). During defendant's trial, defense counsel objected to the State's line of questioning, arguing the inquiry into the officers' histories of DUI arrests violated the *in limine* order. The trial court overruled defendant's objections, stating the testimony was proper foundation for the officers' opinions regarding defendant's intoxication. The trial court also declined defense counsel's request for a sidebar. It was within the trial court's discretion to allow the officers' testimony to come in at trial because the testimony laid foundation for the officers' opinions of the defendant's intoxication and the *in limine* order was subject to reconsideration at trial.

¶ 74     The trial court did not abuse its discretion in denying defendant's motion for a new trial because defendant was not denied a fair trial based on the police officers' *in limine* testimony coming in at trial.

¶ 75                         D. Clerk-Imposed Fines

¶ 76     Defendant finally argues the circuit clerk improperly imposed various fines against him. The State concedes this issue and asks the court enter an order consistent with prior case law in this area. We agree and review *de novo*. *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 99, 55 N.E.3d 117.

¶ 77     A fine is a financial punishment imposed as part of a sentence on a person convicted of a criminal offense. *Id.* ¶ 93. The circuit court can levy a fee on a defendant, but only the trial court can impose fines. *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912.

¶ 78     The trial court ordered defendant pay several items: (1) a $1000 alcohol enforcement fee, (2) a $100 trauma center trust fund fee, (3) a $5 spinal cord research fee, and (4) a $250 DNA fee. The certified fines and fees sheet contains no indication the court ordered or

intended to impose any other assessments. The court's written sentencing order was silent as to financial obligations.

¶ 79        As evidenced by prior case law, the circuit clerk improperly imposed the following fines: (1) $50 court finance assessment; (2) $5 youth diversion assessment; (3) $270 lump-sum surcharge assessment (*People v. Hible*, 2016 IL App (4th) 131096, ¶¶ 16, 20, 24, 53 N.E.3d 319); (4) $28.50 child advocacy fee; (5) $10 medical costs assessment; (6) $15 CASA assessment, which is comparable to the children's advocacy center assessment (*People v. Daily*, 2016 IL App (4th) 150588, ¶ 30, 74 N.E.3d 15); (7) $100 violent crime victims assistance assessment (*Smith*, 2014 IL App (4th) 121118, ¶ 63); (8) $108 drivers education assessment (*People v. Jones*, 223 Ill. 2d 569, 603, 861 N.E.2d 967, 987 (2006)); (9) $9.50 nonstandard assessment; (10) $15 fire prevention assessment; (11) $15 firetruck lane fund assessment; (12) $50 roadside memorial assessment (*People v. O'Laughlin*, 2012 IL App (4th) 110018, ¶¶ 12, 15, 16, 979 N.E.2d 1023); (13) $15 state police operations assessment; (14) $4.75 drug court assessment (*Warren*, 2016 IL App (4th) 120721-B, ¶¶ 138, 147); (15) $17 clerk op add-ons assessment; (16) $70 state's attorney assessment; and (17) $10 state police services assessment. The last three fines collectively make up a juvenile expungement fund assessment. *Id.* ¶¶ 133-34.

¶ 80        Nothing in the record suggests the court reviewed, approved, or intended to incorporate the clerk's calculations. We therefore vacate the fines improperly imposed by the circuit clerk and decline to remand for the fines to be reimposed.

¶ 81                                III. CONCLUSION

¶ 82        We vacate the fines improperly imposed by the circuit clerk. We otherwise affirm. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 83        Affirmed in part and vacated in part.