2020 IL App (2d) 191039-U
No. 2-19-1039
Order filed October 29, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-2158 |
| STEVE A. JOHNSON, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Sufficient evidence supported defendant's DUI conviction even apart from his poor performance on field sobriety tests, which the trial court disregarded because the tests were performed in the rain. Defendant was driving erratically; his breath smelled of alcohol and his eyes were glassy and bloodshot; he admitted that he had been drinking; he was confused when speaking with the officer; and he refused to take a breath test.

¶ 2    Defendant, Steve A. Johnson, was charged with a single count of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) and two counts of aggravated DUI (*id.* §§ 11-501(a)(2), (d)(1)(H), (d)(1)(I)). Following a bench trial, the trial court found defendant guilty of all three counts, merged the convictions, and sentenced defendant to an 18-

month term of probation and 10 days in the Kane County jail. Defendant unsuccessfully moved for a new trial or entry of a judgment of acquittal. Defendant argues on appeal that the State failed to prove his guilt beyond a reasonable doubt and that the trial court erred in denying his posttrial motion. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      At trial, Aurora police officer Jeremy Hunt testified that he received training at the police academy in administering field sobriety tests to suspected intoxicated drivers and took a refresher course in 2012. He could not recall whether he had taken a written test in connection with the refresher course. On December 12, 2018, at around 1 a.m., Hunt received a dispatch concerning a possibly intoxicated motorist in a tan Buick. It was raining, the roads were wet, and it was dark out. Hunt encountered a tan Buick stopped at a red light at the intersection of Galena Boulevard and Broadway Street. Hunt stopped his vehicle in the left turn lane behind another car. The Buick was in the center lane and was adjacent to the car in front of Hunt's vehicle. The Buick's driver's side tires were touching the lane marker. Although the center lane was a through lane, the driver of the Buick activated the left turn signal and made a left turn from this lane when the traffic signal turned green. Hunt followed the Buick to the intersection of Broadway Street and New York Street, where it stopped at a red light. The Buick's driver again activated the left turn signal and turned left from a through lane adjacent to the left turn lane. Hunt followed the Buick and pulled it over. Defendant was driving.

¶ 5      Defendant told Hunt his name and date of birth but did not produce a driver's license or proof of insurance. Hunt learned that defendant's driver's license expired in 2013. Defendant's eyes were glassy and bloodshot, and Hunt smelled alcohol on defendant's breath. After initially denying that he had anything to drink, defendant told Hunt that he had consumed one beer three

hours earlier. Defendant also told Hunt that he had not slept in 32 hours. Hunt had defendant step out of the vehicle so that he could conduct field sobriety tests. Defendant had no trouble getting out of the vehicle. Hunt testified that he was unaware of any rule prohibiting an officer from conducting field sobriety testing in the rain. Hunt administered the horizontal gaze nystagmus (HGN) test, one-leg-stand test, and the walk-and-turn test. Hunt testified that the HGN test showed that defendant had consumed alcohol. The trial court struck that testimony, however, because Hunt had not performed the test correctly.

¶ 6    The one-leg-stand test entailed standing with one leg raised about six inches off the ground while counting until told to stop. While performing the one-leg-stand test, defendant lifted his arms for balance and put his foot down several times. The walk-and-turn test entailed taking nine heel-to-toe steps, turning by pivoting on the left foot and taking several small steps with right foot, and then taking nine heel-to-toe steps back to the starting point. Defendant, however, failed to stand with his right foot in front of his left as directed while Hunt instructed him how to perform the walk-and-turn test and also failed to perform the pivot turn properly. Hunt testified that poor performance on the tests indicated either impairment or consumption of alcohol; he was not sure which.

¶ 7    Hunt arrested defendant and placed him in his squad car. Hunt testified that, while they talked with one another in the squad car, defendant "didn't recall the turns that he had made when he was asking me about why I pulled him over." Hunt told defendant that he made incorrect left turns. Defendant said he was making right turns. Once at the police station, defendant agreed to take a breathalyzer test. However, after two unsuccessful attempts, he stated that he did not want to take the test. He explained that his lawyer advised him not to.

¶ 8    Hunt's vehicle was equipped with a video camera, which recorded the incident. The recording was admitted into evidence and portions were played at trial. The recording was also used to refresh Hunt's recollection about what defendant was wearing. Hunt initially testified that defendant was wearing a jacket when he performed the field sobriety tests. However, after having his recollection refreshed, he acknowledged that defendant was wearing a T-shirt. The video also shows that after defendant told Hunt that he had made right turns, he ultimately corrected himself. However, defendant seemed confused about what had occurred, and Hunt had to repeatedly explain to him that he had made left turns from through lanes.

¶ 9    The trial court found defendant guilty based in part on his poor performance on the field sobriety tests. Defendant thereafter filed a posttrial motion in which he argued that Hunt's testimony was not credible. Defendant further argued that, because it was raining when the field sobriety tests were conducted, the trial court should not have considered his performance on the tests. The trial court entered a written order denying the motion. In doing so, the court indicated that it was no longer considering defendant's performance on the field sobriety tests as indicia of intoxication, because the tests were conducted in the rain. Nonetheless, the order recited various factors indicating that defendant was impaired, including, *inter alia*: (1) the two improper left turns from the through lanes; (2) defendant's admission that he had consumed alcohol; (3) the smell of alcohol on defendant's breath; (4) defendant's glassy, bloodshot eyes; (5) defendant's confusion about whether he had made left turns or right turns; and (6) defendant's refusal to take a breath test.

¶ 10                          II. ANALYSIS

¶ 11    We first consider whether there was sufficient evidence to sustain defendant's conviction. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or

unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When a criminal defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). Furthermore, even when the defendant provides uncontradicted testimony, "the trier of fact is not obligated to accept all or any part of that testimony, but may assess the probabilities, the reasonableness of any defense offered and reject any or all of defendant's account in favor of the State's circumstantial evidence of guilt." *People v. Hendricks*, 253 Ill. App. 3d 79, 90 (1993).

¶ 12     Defendant's conviction for DUI of course requires proof that the defendant drove or was in actual physical control of a vehicle while under the influence of alcohol, the sufficiency of which is the sole issue raised in this appeal.  625 ILCS 5/11-501(a)(2) (West 2016). A DUI conviction can be based solely on circumstantial evidence. *People v. Love*, 2013 IL App (3d) 120113, ¶ 35. Furthermore, "[t]he testimony of a single officer is sufficient to sustain a conviction of DUI." *People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 48. Although "the testimony of a single witness must be positive and credible to convict," the trier of fact is not obliged to disregard it simply because the defendant contradicts it. *Id.* It has been observed that "[i]ntoxication is a question of fact and may be proved in a number of ways." *Love*, 2013 IL App (3d) 120113, ¶ 35. Evidence that a motorist's breath smelled of alcohol and his or her eyes were glassy and bloodshot is

germane to whether he or she was under the influence of alcohol. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). Evidence that a motorist was driving erratically is also relevant. *People v. Gordon*, 378 Ill. App. 3d 626, 632 (2007). Furthermore, a motorist's refusal to submit to testing to determine his or her blood-alcohol level is evidence of consciousness of guilt. *People v. Romanowski*, 2016 IL App (1st) 142360, ¶ 17. In this case, the State presented evidence of all of these factors.

¶ 13    Defendant argues, however, that his eyes might have been glassy and bloodshot because, as he explained to the arresting officer, he had been awake for 32 hours straight. Such arguments, however, ignore the review standard we employ when considering the sufficiency of the evidence. Consider, for example, *People v. Williams*, 2018 IL App (2d) 160683, where the defendant in a DUI prosecution attempted to provide an innocent explanation for the indicia of impairment by testifying that he was exhausted from a lack of sleep and a long workday. We held that "whether to credit that testimony, and what weight to give it, was for the jury to decide." *Id.* ¶ 21. Similarly here, it was for the trial court to weigh defendant's explanation in the context of all the other evidence.

¶ 14    Defendant also argues that he performed the field sobriety tests reasonably well despite the poor weather, suggesting that he was not under the influence of alcohol. Even assuming, *arguendo*, that defendant's characterization of his performance is accurate, the argument is unpersuasive. "[A] conviction of DUI does not require proof that the defendant 'was completely incapacitated by alcohol.' [Citation.] The prosecution need prove only that the defendant 'was impaired by alcohol *** to the extent that it rendered him incapable of driving safely.' " *Id.* ¶ 15 (quoting *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29). A motorist is considered to be under the influence of alcohol when, due to alcohol consumption, he or she lacks the mental clarity needed

to operate a motor vehicle safely, such as here where the motorist repeatedly turns left from a through lane.

¶ 15　In an effort to explain why he made left turn lanes from the center lanes, defendant argues that, due to the weather, the lane markings were not visible. It is true that, when asked whether it is difficult to see lane markers at night in heavy rain, Hunt responded "[i]t can be." However, he did not testify that that was the case here. To the contrary, he testified that he had no trouble distinguishing between the center lane and the left turn lane. Defendant also notes that he operated his vehicle safely by obeying traffic signals, using his turn signals, and curbing his vehicle when Hunt pulled him over. However, the ability to perform certain tasks when operating a motor vehicle does not necessarily mean that a motorist is in a condition to operate the vehicle safely. *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 38.

¶ 16　More generally, defendant contends that Hunt's testimony was "wholly incredible." Defendant notes that the trial court (1) struck Hunt's testimony regarding the HGN test because the officer did not properly administer the test and (2) ultimately disregarded Hunt's testimony concerning field sobriety testing because it was conducted in unsuitable weather conditions. Hunt's deficiencies in administering the field sobriety tests, however, do not undermine the credibility of Hunt's testimony on other matters. Although, as defendant notes, there were gaps in the officer's memory and parts of his testimony were incorrect, "[w]e afford great deference to the trial court's assessment of witness credibility, because it was in a superior position to observe the witnesses' demeanor and resolve any conflicts in their testimony." *People v. Lenz*, 2019 IL App (2d) 180124, ¶ 115. Accordingly, we "[do] not substitute [our] judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Martinez*, 2019 IL App (2d) 170793, ¶ 86.

¶ 17    Defendant contends that the facts in this case are similar to *People v. Day*, 2016 IL App (3d) 150852, where the court, after discounting field sobriety tests that were improperly administered in the rain on wet pavement, held that the remaining evidence was insufficient to provide probable cause to arrest the defendant for DUI. Without the field sobriety tests, the remaining evidence in *Day* was that defendant admitted to drinking earlier in the evening, an odor of alcohol emanated from his mouth, his eyes were glassy and bloodshot, and that his speech was slurred. Defendant argues that if the evidence in *Day* was insufficient to establish probable cause, he cannot be guilty beyond a reasonable doubt. However, in this case, unlike in *Day*, defendant was driving erratically and his refusal to submit to chemical testing to determine his blood-alcohol level was further evidence of guilt. Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

¶ 18    Defendant also contends that the trial court erred in denying his posttrial motion. According to defendant, the court should have entered a judgment of acquittal or granted him a new trial because, once the trial court discounted the evidence of defendant's performance on the field sobriety tests, "there remained no credible evidence against [defendant] to prove beyond a reasonable doubt that he was impaired by alcohol." In substance, the argument is no different than defendant's meritless challenge to the sufficiency of the evidence. Accordingly, the trial court did not err in denying the posttrial motion.

¶ 19                            III. CONCLUSION

¶ 20    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 21    Affirmed.