2022 IL App (1st) 211121-U

No. 1-21-1121

Order filed October 14, 2022

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 C3 30260 |
| | ) | |
| ARAMIS HATCH, | ) | Honorable |
| | ) | Joseph M. Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CONNORS delivered the judgment of the court.
Justices Cunningham and Mitchell concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's conviction for aggravated battery of a peace officer over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2     Following a jury trial, defendant Aramis Hatch was found guilty of aggravated battery of a peace officer and sentenced to 24 months' probation. On appeal, defendant contends the State did not establish that he knowingly made contact of an insulting or provoking nature with a peace officer when he kicked the officer. We affirm.

¶ 3    Defendant was charged by information with four counts of aggravated battery of a peace officer arising from an incident on October 17, 2020. Defendant was separately charged with driving under the influence of alcohol, leaving the scene of an accident, operating an uninsured motor vehicle, and failure to reduce speed. The State nol prossed the majority of the charges and proceeded to trial on one count of aggravated battery of a peace officer and one count of driving under the influence of alcohol. Relevant here, the aggravated battery count charged defendant knowingly made physical contact of an insulting and provoking nature with Hoffman Estates officer Sean Kenost when he struck Kenost about the body and knew Kenost was a peace officer performing his official duties. (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)).

¶ 4    At trial, Ankush Khanna testified that early on October 17, 2020, he woke to "a loud screeching and collision noise" outside his residence in Hoffman Estates. Khanna exited his home and saw that a silver vehicle had struck his neighbor's vehicle. Both vehicles were in Khanna's neighbor's driveway, with the silver vehicle "wedged on an angle." A man exited the driver's side of the silver vehicle and fled.

¶ 5    Hoffman Estates police officer John Onorad testified that he responded to the accident and saw a damaged vehicle "in the middle of the street." A person stood near the open driver's side door, looking inside. The man, whom Onorad identified in court as defendant, fled on foot as Onorad approached. Defendant was detained by another officer. After officers handcuffed defendant, he was "verbally abusive" and "very upset." Defendant also had a "strong odor" of alcohol.

¶ 6    At the lockup, Onorad administered the standardized field sobriety tests to defendant. According to Onorad, defendant's performance demonstrated impairment. During Onorad's

interactions with defendant, defendant was alternately "verbally combative" and "nonchalant" or "relaxed." After Onorad read defendant the warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant requested medical attention, stating "everywhere" hurt. Officer Jack Drake accompanied defendant to the hospital. Onorad identified video footage showing defendant performing the standardized field sobriety tests. The footage was published and is included in the record on appeal.

¶ 7    Edward Joseph Agarvante, an emergency room nurse at St. Alexius Medical Center, testified that defendant arrived at approximately 5 a.m. on October 17, 2020. Agarvante identified defendant's medical records, which are in the record on appeal. According to the records, defendant's blood was drawn and tested for, *inter alia*, alcohol level. The records stated that the presence of alcohol in defendant's blood was 195 milligrams per deciliter.

¶ 8    Kenost testified that around 5.a.m. on October 17, 2020, he was "on prisoner watch" at St. Alexius Hospital, wearing his uniform. While Kenost was watching his "prisoner," Drake entered another room with a different "prisoner," who began "yelling and screaming." Kenost walked to the other room to assist, and saw defendant with Drake and one or two staff members.

¶ 9    Defendant was standing with one hand cuffed to the hospital bed and was "agitated" because hospital staff had given him a urinal bottle instead of letting him use the restroom. Defendant was yelling, swearing, and threatening to urinate on the floor unless he was allowed to use the restroom. Kenost, Drake, and the hospital staff left the room to give defendant privacy. Then, defendant, who was four feet from the door, dropped his shorts and urinated on the floor and into the hallway. Defendant was "swearing and yelling and saying that he told the staff that he was going to urinate on the floor."

¶ 10    After the staff cleaned the floor, they closed the door to try curb the disturbance defendant created, leaving defendant alone in the room. Five to 10 minutes later, Kenost heard "loud pounding like somebody was either kicking the door or kicking the walls." Drake and Kenost pushed the door open approximately six inches before defendant kicked or pushed the door back, which struck Drake. Kenost and Drake forced the door open and saw that defendant had dragged his bed closer to the door so that he was "just on the other side" of the door. Drake told defendant to lie in the bed, but defendant began yelling and swearing. Kenost attempted to push defendant back in bed by placing his left hand on defendant's upper chest, pushing him back against the bed. He used his right hand to grab one of defendant's legs. Kenost worried that defendant would damage hospital property or injure the staff.

¶ 11    As Kenost grabbed defendant's leg, defendant turned "side to side" to prevent the officers from grabbing him, "but then after a brief time he started throwing kicks." Defendant kicked Kenost three times in his outer right leg, and once in his upper inner left leg. Drake eventually secured defendant in the hospital bed. Kenost was not injured, but was "upset" because defendant was kicking him while he was "just trying to do [his] job."

¶ 12    On cross-examination, Kenost stated that defendant's right hand was cuffed to the railing of the hospital bed. Kenost did not recall whether defendant's other hand had an I.V. Kenost did not recall the location of the urinal cup when defendant urinated on the floor. Kenost could not see through the wooden door, so he assumed the sound he heard was kicking or pounding. The bed was too far from the door to block the officers from entering the room. The door was being pushed shut against the officers so they had to force it open. When Kenost pushed defendant toward the bed, the raised railing of the bed was blocking defendant from being pushed onto the bed, but

defendant was also pushing back. Drake was trying to get hold of defendant's "other loose arm" and one of his legs to lift him back onto the bed. Defendant was standing, trying to keep his balance with one hand cuffed to the bed, as the officers were trying to bring his legs to the bed. Drake did not handcuff defendant's other hand to the bed prior to attempting to put defendant's legs on the bed.

¶ 13    The court granted defendant's motion for a directed verdict regarding the driving under the influence charge, but denied defendant's motion with respect to the charge of aggravated battery of a peace officer.

¶ 14    In closing, defense counsel argued that defendant kicked at the officers instinctually because he was handcuffed to a hospital bed while they were pushing him, and thus reacted in self-defense when "his legs [were] swiped out." Counsel argued defendant was defending himself from getting hurt, from falling to the floor and the IV tearing. The jury found defendant guilty of aggravated battery of a peace officer.

¶ 15    Defendant filed a motion for a new trial, arguing in part that the State failed to prove the elements of aggravated battery, specifically that defendant acted knowingly in kicking the officers or that his actions insulted or provoked Kenost. The court denied defendant's motion.

¶ 16    After a hearing, the court sentenced defendant to 24 months' probation. Defendant did not file a motion to reconsider sentence.

¶ 17    On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he made knowing, rather than accidental or reckless, contact with Kenost, or that the contact was "insulting or provoking." He contends the evidence only showed that he kicked because he risked losing his balance and falling, rather than in a conscious effort to kick the officers, and he did not

know the contact would be insulting or provoking. Further, defendant argues that Kenost only testified he was "upset" by defendant's actions, and thus the actions were not insulting or provoking.

¶ 18    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not retry the defendant or substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 19    To sustain defendant's conviction for aggravated battery of a peace officer as charged, the State had to prove beyond a reasonable doubt that he knowingly and without legal justification made physical contact of an insulting or provoking nature with Kenost, whom he knew to be a peace officer performing his official duties. 720 ILCS 5/12-3(a)(2), 12-3.05(d)(4)(i) (West 2020). Defendant only challenges that he knowingly made insulting and provoking contact with Kenost, and that the contact was of an insulting or provoking nature.

¶ 20    Defendant first argues that the State failed to prove that he knowingly, rather than accidentally or recklessly, kicked Kenost.

¶ 21    A person acts knowingly where he is "consciously aware" of the nature of his conduct and that his conduct is practically certain to cause a particular result. 720 ILCS 5/4-5(a), (b) (West 2020). Knowledge is generally established by circumstantial evidence rather than by direct proof. *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26. Whether a defendant acted with the requisite state of mind is a question for the trier of fact. *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 33.

¶ 22    Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that defendant knowingly kicked Kenost. The record shows that defendant was agitated and aggressive at the hospital, swore and cursed at the officers, refused their direction to get back in bed, and kicked Kenost not once but four times in his legs as he was attempting to put defendant back into bed. A rational jury could therefore determine that defendant intended to kick Kenost. See *Belknap*, 2014 IL 117094, ¶ 67.

¶ 23    Defendant nevertheless contends that the State did not prove that he acted knowingly, as opposed to accidentally or recklessly. He argues that his act of kicking, "when he was at a significant risk of losing his balance" and injuring himself, does not establish that he was consciously aware that he would make physical contact of an insulting or provoking nature with an officer. Defendant contends that he was not violent, but rather, "disruptive," intoxicated, and attempting to urinate into a bottle while handcuffed, which support the conclusion that he did not knowingly batter Kenost.

¶ 24    First, the record refutes defendant's contention that he was never violent or aggressive. Onorad testified that defendant was "verbally abusive" and "very upset" when he was arrested and

was intermittently "verbally combative" when performing the standardized field sobriety tests. Kenost testified that at the hospital, he heard defendant "yelling and screaming" even before Kenost went to assist Drake. Further, defendant swore and yelled at hospital staff and the officers during their interactions. "[A] jury [can] reasonably infer intent from expressions of anger, made immediately prior to the battery." *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009). Defendant's anger at the officers, therefore, supports the conclusion that he knowingly kicked Kenost.

¶ 25    Additionally, defendant's act of kicking Kenost four times in the legs, as Kenost attempted to restrain him, suggests that defendant intended to kick him and for the contact to be insulting or provoking. See *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 44 ("Intent may be inferred (1) from the defendant's conduct surrounding the act and (2) from the act itself"); 720 ILCS 5/4-5 (West 2020) (knowledge element of an offense may be established if a person acts intentionally). Defendant was intoxicated, angry, and kicked Kenost multiple times while Kenost attempted to subdue him, facts which indicate that he knowingly made contact of an insulting or provoking nature with Kenost. See, *e.g.*, *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 31 (affirming aggravated battery conviction where the defendant was intoxicated, physically uncooperative and combative, and kicked an officer attempting to place her in a holding cell).

¶ 26    While defendant contends that kicking his legs while unbalanced shows that he did not intend to kick Kenost and did not intend the contact to be insulting or provoking, the jury was not required to accept this interpretation of events. An equally possible inference is that defendant was angry at being handcuffed to a hospital bed, told to urinate into a container, and then being forced into the bed by the officers, and so intentionally kicked Kenost in his legs four times. "[T]he trier of fact is not required to accept any possible explanation compatible with the defendant's

innocence and elevate it to the status of reasonable doubt." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009). Here, the evidence shows that defendant was the aggressor and his actions were violent. We thus find a rational trier of fact could have found that defendant knowingly kicked Kenost and intended for the kicks to be insulting or provoking.

¶ 27    Defendant next argues that the State did not prove that his contact with Kenost was insulting or provoking.

¶ 28    Physical contact may be considered insulting or provoking based upon the factual context in which it occurs (*People v. Peck*, 260 Ill. App. 3d 812, 814 (1994)), including the relationship between the parties (*People v. DeRosario*, 397 Ill. App. 3d 332, 333-34 (2009)). "The victim does not have to testify he or she was provoked; the trier of fact can make that inference from the victim's reaction at the time." *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55.

¶ 29    Here, defendant kicked Kenost four times, including in his upper leg area and groin area, as Kenost was attempting to restrain him. Defendant was belligerent with the police officers during most of the incident. Kenost testified that he was "upset" at defendant's actions because Kenost was "just trying to do [his] job." A rational trier of fact could have found that defendant's actions were insulting or provoking.

¶ 30    Defendant contends that his actions were not insulting or provoking because they were "seemingly reckless" and were performed to stop the officers from restraining him on the hospital bed, rather than "to disgust and insult." Defendant argues that Kenost stated that the actions "upset" him, but not that he was insulted or provoked. Defendant contends that because Kenost was a police officer on "prisoner watch," he was in a different position than an ordinary citizen as to whether defendant's conduct was insulting or provoking.

¶ 31  We disagree. As noted, Kenost was not required to testify that the actions were insulting or provoking in order for the jury to find that the element was satisfied. See *id*. However, Kenost did testify that he was upset by defendant's actions. Given that defendant kicked Kenost four times, including in the upper leg and groin area, the jury could infer that Kenost was insulted or provoked. We defer to the jury's judgment concerning Kenost's credibility regarding his state of mind. See *Brown*, 2013 IL 114196, ¶ 48. Taking the evidence in a light most favorable to the State, a rational trier of fact could find that defendant provoked or insulted Kenost by kicking him.

¶ 32  The evidence supporting defendant's conviction for aggravated battery of a peace officer is not so unreasonable or improbable as to create a reasonable doubt of his guilt. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 33  Affirmed.